SAM HIRSCH
Acting Assistant Attorney General
NORMAN L. RAVE, JR., Trial Attorney
D.C. Bar No. 431602
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 616-7568/Fax: (202) 514-8865
Email:Norman.Rave@usdoj.gov
 (Additional Counsel listed below)
Attorneys for Defendant United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et. al., ) | |
| Plaintiffs, ) | Case No. 2:14-cv-1667-ABC-CW |
| v. ) | MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL |
| THE UNITED STATES ARMY CORPS OF ENGINEERS, et al., ) | |
| Defendants. ) | |

# **TABLE OF CONTENTS**

BACKGROUND ..........................................................................................1

I.     Statutory Background..................................................................1

       A.     The Clean Water Act...........................................................1

       B.     The Administrative Procedure Act .......................................8

II.    FACTUAL BACKGROUND .........................................................9

STANDARD OF REVIEW ........................................................................12

ARGUMENT .............................................................................................13

I.     THE COURT LACKS JURISDICTION BECAUSE THERE IS
       NO FINAL AGENCY ACTION BY EPA ..................................14

II.    THE COURT LACKS JURISDICTION BECAUSE EPA'S
       DECISION WHETHER TO EXERCISE ITS VETO AUTHORITY
       IS COMMITTED TO AGENCY DISCRETION BY LAW.......................17

III.   PLAINTIFFS LACK STANDING BECAUSE PLAINTIFFS'
       ALLEGED INJURIES ARE NOT CAUSALLY RELATED TO
       ANY ACTION BY EPA AND THERE IS NO MEANINGFUL
       RELIEF THE COURT CAN ORDER AGAINST EPA............................23

CONCLUSION..........................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*,
   515 F. Supp. 2d 1 (D.C.C. 2007)............................................................. 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 13

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................. 15

*Bowles v. Russell*,
   551 U.S. 205 (2007) ............................................................................. 13

*Cascade Conservation League v. M.A. Segale, Inc.*,
921 F. Supp. 692, (W.D. Wash. 1996)…………………………………..22

*Ctr. for Biological Diversity v. Dep't of Fish and Wildlife*,
   169 Cal. Rptr. 3d 413 (Cal Ct. App. 2014) ............................................ 10

*Christopher v. Harbury*,
   536 U.S. 403 (2002) ............................................................................. 12

*City of Olmsted Falls v. EPA*,
   266 F. Supp. 2d 718 (N.D. Ohio 2003) .................................................. 22

*City of San Diego v. Whitman*,
   242 F.3d 1097 (9th Cir. 2001).............................................................. 15

*Coeur Alaska Inc. v. Sw. Alaska Conservation Council*,
   557 U.S. 261 (2009) ........................................................................ 3, 21

*EPA v. Cal. ex rel. State Water Res. Control Bd.*,
   426 U.S. 200 (1976) ............................................................................... 1

*Exxon Mobil Corp. v. Allapattah Servs. Inc.*,
   545 U.S. 546 (2005) ................................................................. 13

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
   460 F.3d 13 (D.C. Cir. 2006) .................................................. 15

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ........................................................... 18, 19

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ................................................ 12

*Lane v. Pena*,
   518 U.S. 187 (1996) ................................................................. 13

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ................................................................. 18

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................... 12, 23

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ................................................................. 13

*Norton v. S. Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ............................................................. 8, 24

*Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*,
   Civ. A. Nos. 3:05-0784, 2009 WL 3424175 (S.D. W. Va. Oct. 21, 2009). 3

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army*
*Corps of Eng'rs*, 915 F. Supp. 378, (N.D. Ga. 1995),
   aff'd 87 F.3d 1242 (11th Cir. 1996)…………………………………22

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*,
   87 F.3d 1242 (11th Cir. 1996).................................................. 24

*Rank v. Nimmo*,
   677 F.2d 692 (9th Cir. 1982) ...................................................................... 21

*Ruff v. Hodel*,
   770 F.2 839 (9th Cir. 1985) ......................................................................... 20

*S.D. Myers, Inc v. City and Cnty. of San Francisco*,
   253 F.3d 462 (9th Cir. 2001) ....................................................................... 12

*Serrato v. Clark*,
   486 F.3d 560 (9th Cir. 2007) ....................................................................... 20

*U. S. Dep't of Energy v. Ohio*,
   503 U.S. 607 (1992) ..................................................................................... 14

*Wild Fish Conservancy v. Jewell*,
   730 F.3d 791 (9th Cir. 2013) ................................................................. 14, 15

**STATUTES**

5 U.S.C. § 551(13) ......................................................................... 8, 14, 16

5 U.S.C. §§ 701-706 ............................................................................... 8

5 U.S.C. § 701(a)(2) ......................................................................... 8, 17

5 U.S.C. § 702 ........................................................................................ 8

5 U.S.C. § 704 ................................................................................. 8, 14

5 U.S.C. § 706(1) .................................................................................. 8

5 U.S.C. § 706(2) .................................................................................. 8

33 U.S.C. § 1251(a) ............................................................................... 1

33 U.S.C. § 1311(a) ............................................................................... 1

33 U.S.C. § 1344(a) ..................................................................... 2, 17, 21

33 U.S.C. § 1344(a)-(b) ............................................................................. 2

33 U.S.C. § 1344(g)-(j) ............................................................................. 2

33 U.S.C. § 1344(b) ............................................................................. 2, 3

33 U.S.C. § 1344(c) ................................................................. 2, 3, 17, 19

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1) ...................................................................... 1, 12

Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 12

**CODE OF FEDERAL REGULATIONS**

33 C.F.R. § 325.8 .................................................................................... 6

40 C.F.R. Pt. 230 .................................................................................... 2

40 C.F.R. § 231.3 ......................................................................... 7, 16, 17

40 C.F.R. § 231.3(a) ............................................................................. 20

40 C.F.R. § 231.4 ............................................................................. 7, 16

40 C.F.R. § 231.5 .................................................................................. 7

40 C.F.R. § 231.6 ............................................................................. 7, 8

Defendants United States Army Corps of Engineers, *et al.*, (collectively "Federal Defendants") move pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for dismissal of the Plaintiffs' claims against defendants United States Environmental Protection Agency, Gina McCarthy, in her official capacity as Administrator, and Jared Blumenfeld, in his official capacity as Regional Administrator, (collectively "EPA") for lack of subject matter jurisdiction and standing.

## BACKGROUND

### I.  Statutory Background

#### A.  The Clean Water Act

The Clean Water Act ("CWA") is a comprehensive statute designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  To achieve this goal, Congress sought to control discharges of pollutants at their source.  *See EPA v. Cal. ex rel. State Water Res. Control Bd.*, 426 U.S. 200, 204-05 (1976).  Accordingly, the Act prohibits the discharge of any pollutant into covered waters in the absence of a permit.  33 U.S.C. § 1311(a).  Permit programs established by the CWA include the Section 404 program, which authorizes the United States Army Corps of Engineers ("Corps") (or approved states) to issue permits for the discharge of dredged or fill material into navigable

waters at specific sites.  33 U.S.C. § 1344(a)-(b), (g)-(j).  Such sites are to be specified by the Corps "through the application of guidelines developed by [EPA], in conjunction with [the Corps]."  33 U.S.C. § 1344(b).  These "guidelines" are found at 40 C.F.R. Pt. 230.

EPA does not issue Section 404 permits.  Rather, such permits are issued by the Corps.  The Corps' issuance of permits and specification of disposal sites is subject to EPA's oversight authority under Section 404(c), which provides:

The Administrator is *authorized* to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is *authorized* to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas.  Before making such determination, the Administrator shall consult with the Secretary [of the Army].  The Administrator shall set forth in

writing and make public his findings and his reasons for

making any determination under this subsection.

33 U.S.C. § 1344(c) (emphasis added).

The "specification" of a disposal site refers to the process by which a disposal site is specified by the Corps permit. *See Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs,* Civ. A. Nos. 3:05-0784, 3:06-0438, 2009 WL 3424175, at *1 n.1 (S.D. W. Va. Oct. 21, 2009); 33 U.S.C. § 1344(b) ("each such disposal site shall be specified for each such permit by the [Corps]"). Because Section 404(c) authorizes EPA to prohibit, withdraw, deny, or restrict the specification of such disposal sites that would otherwise be authorized by a Section 404 permit, EPA's authority under Section 404(c) is often described as the authority to "veto" the permit. *Coeur Alaska Inc. v. Sw. Alaska Conservation Council*, 557 U.S. 261, 274 (2009). EPA has used this authority very sparingly, issuing only 13 final veto actions since 1972, compared to the many thousands of Corps permits that have been issued during that time. *See id.* at 303 n.5 (Ginsburg, J., dissenting) (noting that EPA had exercised its veto power only a dozen times over 36 years encompassing more than one million permit applications).

EPA and the Department of the Army have entered into a Memorandum of Agreement ("MOA") establishing policies and procedures

to implement CWA section 404(q) to minimize, to the maximum extent practicable, duplication, needless paperwork and delays in the issuance of permits. *Memorandum of Agreement Between the Environmental Protection Agency and the Department of the Army* (Aug. 1992), http://water.epa.gov/lawsregs/guidance/wetlands/upload/1992_MOA_404q.pdf, Specifically, Part II of the MOA describes the general process for EPA to provide comments in response to public notices for individual permit applications. The MOA provides that the Corps will ensure the timely receipt by EPA's Regional office of public notices and that EPA will provide its comments within the public comment period unless it requests an extension of time. MOA ¶ II.4. It further provides that in certain cases, the Corps may request additional comments from EPA or discuss with EPA issues relevant to the permit after the public comment period. *Id.* ¶ II.6.

Part IV of the MOA describes the procedures for elevation of certain specific individual permit cases from an EPA Region to EPA Headquarters. This process is limited to those cases that involve unacceptable adverse effects to aquatic resources of national importance ("ARNI"). EPA's Regional Administrator initiates the review process by notifying the Corps' District Engineer during the comment period that, in the opinion of EPA, the project may result in substantial and unacceptable impacts to an ARNI. *Id.*

¶ IV.3(a).   EPA may notify the Corps within 25 days after the end of the comment period that, in EPA's opinion, the discharge will have substantial and unacceptable impacts to an ANRI.  *Id*. ¶ IV.3(b).

Once the Corps' District Engineer receives the EPA Regional Administrator's letter pursuant to MOA Part IV.3(b) notifying the District Engineer that, in EPA's opinion, the discharge will have substantial and unacceptable impacts to an ARNI, the District Engineer must, prior to issuing a 404 permit, provide the applicable EPA Region's Director of the Water Division with a "notice of intent to proceed" ("NOI") with the Corps' decision to issue the permit, which then allows the EPA Region time (15 days as discussed below) to consider whether to elevate the Corps' permit decision to EPA Headquarters pursuant to Part IV.3(d) of the MOA.  *Id*. ¶ IV.3(c).  Pursuant to Part IV.3(d) of the MOA, the Regional Administrator has 15 calendar days from receipt of the draft permit or other documents specified in Part IV.3(c) to notify the District Engineer of the Regional Administrator's decision to (1) not request higher level review; or (2) forward the issue to the Assistant Administrator, Office of Water with a recommendation to request review by the Assistant Secretary of the Army for Civil Works.

If the EPA Regional Administrator forwards the issue to the EPA

Assistant Administrator, pursuant to Part IV.3(d)(2) of the MOA, the Corps

will hold in abeyance the issuance of the permit until the Headquarters level

review is complete.  *Id.* ¶ IV.3(e).   Pursuant to Part IV.3(f) of the MOA, the

EPA Assistant Administrator has 20 days to either notify the Assistant

Secretary of the Army that EPA will not request further review or request

the Assistant Secretary to review the permit decision documents.  The

Assistant Secretary would then have 30 days to review the permit decision

document and either: (1) inform the District Engineer to proceed with final

action on the permit decision, (2) inform the District Engineer to proceed

with final action in accordance with specific policy guidance, or (3) make

the final permit decision in accordance with 33 C.F.R. § 325.8.  *MOA*

¶ IV.3(g).  Then, pursuant to Part IV.3(h) of the MOA, the Assistant

Secretary of the Army will immediately notify the EPA Assistant

Administrator of their decision.  *Id.* ¶ IV.3(h).  The permit is not to be issued

during a period of 10 calendar days after such notice unless the permit

contains a condition that no activity may take place pursuant to the permit

until such 10th day, or if the EPA has initiated a Section 404(c) proceeding

during such 10 day period, until the Section 404(c) proceeding is concluded

and subject to the final determination in such proceeding. *Id.* ¶ IV.3(h).

If EPA has reason to believe that an unacceptable adverse effect could result from specification or use for specification of a project, the Regional Administrator may initiate an action under section 404(c).  If so, the Regional Administrator is required to notify the District Engineer that the Regional Administrator intends to issue a public notice of proposed determination to prohibit or withdraw the specification, or to deny, restrict or withdraw the use for specification. The Regional Administrator will provide public notice of a proposed determination if not satisfied that the unacceptable adverse effects will not occur or the District Engineer does not notify the Regional Administrator of an intent to take corrective action. The Regional Administrator will provide public notice and opportunity for comment, including a public hearing if required pursuant to the regulations. 40 C.F.R. §§ 231.3, 231.4.

After the comment period closes, the Regional Administrator may forward a recommended determination to the Administrator that the Agency should exercise its authority under section 404(c).  *Id.* § 231.5.  The Administrator is then required to consult with the Chief of Engineers, the owner of record, and, where applicable, the State and the applicant, if any before making a final determination. *Id.* § 231.6. Notice of such final determination must be published as provided in 40 C.F.R. § 231.3, and must

be given to all persons who participated in the public hearing.  Notice of the Administrator's final determination must also be published in the *Federal Register. Id.* § 231.6.

### B.   The Administrative Procedure Act

The judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provide that persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute" have a right to judicial review.  5 U.S.C. § 702; *see also id*. § 704 (specifying reviewable actions).  There are limitations, however, on the Court's jurisdiction under the APA.  First, judicial review is limited to "final" agency actions.  5 U.S.C. § 704.  Secondly, agency action "committed to agency discretion by law" is not reviewable.  *Id.* § 701(a)(2).

Agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise unlawful may be set aside.  *Id.* § 706(2).  "Agency action" includes certain failures to act, and a court has authority to "compel agency action unlawfully withheld."  *Id.* §§ 551(13), 706(1).  However, the only actions that may be compelled are those that are "legally *required*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (italics in original).

## II.   FACTUAL BACKGROUND

In this case Plaintiffs seek review of a permit issued by the Corps' Los Angeles District to Intervenor Newhall Land and Farming Company ("Newhall") for the permanent discharge of fill onto 47.9 acres of waters of the United States, including 5.1 acres of wetlands, and for the temporary discharge of fill onto 35.3 acres of waters of the United States, including 11.8 acres of wetlands, in association with grading, construction and maintenance of infrastructure, including roads, utilities and flood control structures for the Newhall Ranch Management and Development Plan ("RMDP"), as described in the Final Newhall Ranch Project Description dated August 11, 2011.

The RMDP is a conservation, mitigation, and permitting plan for the long-term management of sensitive biological resources in conjunction with infrastructure improvements within an approximate 12,000-acre area located near the city of Santa Clarita, in northwestern unincorporated Los Angeles County.  Newhall applied to the Corps for a permit under CWA section 404 for permanent discharges to 93.3 acres of waters of the United States in December 2003.  The Corps and the California Department of Fish and Game prepared a joint Environmental Impact Statement/Environmental Impact Report, which was subject to several rounds of public comment and

judicial review in the California courts.  *See Ctr. for Biological Diversity v. Dep't of Fish and Wildlife*, 169 Cal. Rptr. 3d 413, 419-26 (Cal Ct. App. 2014), cert. granted July 9, 2014. The Corps issued public notices on May 4, 2009, and June 17, 2010, advising all interested parties of the proposed activity for which a permit was sought by Newhall and soliciting comments and information necessary to evaluate the probable impact on the public interest.  The Department of the Army individual permit was both proffered and executed by the Corps on October 19, 2012.

In response to the public notices, EPA provided comments to the Corps and worked with the Corps to address EPA's concerns.  In addition, in accordance with the MOA described above, on August 24, 2009, EPA Region 9 notified the Corps' District Engineer that, in EPA's opinion, the proposed discharge may result in substantial and unacceptable impacts to the Santa Clara River and its tributaries, aquatic resources of national importance.  Subsequently, on September 17, 2009, EPA Region 9 notified the Corps that because EPA had not yet received responses to its concerns, and in light of the time periods provided in the MOA and the need to preserve the Agency's authority to elevate the proposed permit in the event its concerns were not addressed, EPA was reaffirming its objections on the basis that the authorization for discharges associated with  the project as then

proposed would result in substantial and unacceptable impacts to an ARNI. Att. 1.  The letter noted that EPA looked forward to working with the Corps to resolve EPA's concerns.  *Id.*  In accordance with Part IV.3(c) of the MOA, on July 25, 2011, EPA received the Corps' Notice of Intent to issue the permit.

On August 9, 2011, the EPA Regional Administrator notified the Corps that, as a result of the changes in the permit since the original proposal, the Regional Administrator would not be seeking higher level review of the draft permit.  Att. 2.  Among the changes to the permit noted by EPA were that direct impacts to waters of the United States had been cut in half, including a 75 percent reduction in impacts to wetlands; a reduction in impacts in Potrero Canyon from 32.8 acres to 2.0 acres; requirements for low impact development and restrictions on oil and gas drilling; and increased amounts of mitigation.  Att. 2 at 1-2.

The original Complaint in this action was filed March 6, 2014, ECF No. 1, and an Amended Complaint was filed July 22, 2014, ECF No. 28.[1]  It seeks review of the Corps' issuance of the final permit and alleges that issuance of the permit is inconsistent with the Clean Water Act (Count One),

---

[1] Because the Federal Defendants are filing this motion to dismiss, the parties agree that, pursuant to Fed. R. Civ. Proc. 12(b), no Answer is currently required from Federal Defendants.

the National Environmental Policy Act (Count Two), and the National Historic Preservation Act (Count Three).  The sole claim against EPA is in Count One, specifically in paragraph 104, where Plaintiffs seek review of EPA's alleged "decision not to veto" the permit issued by the Corps.

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction must be granted if the court lacks the statutory authority to hear and decide the dispute.  Fed. R. Civ. P. 12(b)(1).  Where a defendant attacks subject matter jurisdiction based on the face of the complaint – as is the case here – the court should accept factual allegations in the Complaint as true in deciding the motion.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However the burden of establishing jurisdiction falls squarely upon the plaintiff.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *S.D. Myers, Inc v. City and Cnty. of San Francisco*, 253 F.3d 462, 474 (9th Cir. 2001).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint.  *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  A claim may be dismissed under Rule 12(b)(6) either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim.

*Neitzke v. Williams,* 490 U.S. 319, 325, 327-28 (1989).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified the specificity in pleading that is necessary to survive a motion to dismiss.  The Court stated that a plaintiff's obligation to set forth the "grounds" of its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citations omitted).  The Court added that "[f]actual allegations *must be enough to raise a right to relief above the speculative level* . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted; emphasis added).

### ARGUMENT

Federal courts are courts of limited jurisdiction and may only hear cases or controversies authorized by the Constitution and by statute.  *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005).  Where the Constitution does not waive the government's sovereign immunity, waiver, if it exists at all, "must be unequivocally expressed in statutory text."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  "Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them."  *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007).  Any waiver of sovereign immunity must be "'construed

strictly in favor of the sovereign' . . . and not 'enlarge[d] . . . beyond what the language requires.'"  *U. S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (citations omitted).

In Count One of the Complaint, the Plaintiffs seek review under the APA of EPA's alleged decision not to "veto" the Corps' issuance of the Clean Water Act section 404 permit to Newhall.  ECF No. 28 ¶ 106.  The Court lacks jurisdiction over this claim because there is no reviewable final agency action by EPA and because EPA's decision whether to veto a 404 permit is "committed to agency discretion by law," and thus does not fall within the waiver of sovereign immunity provided by the APA.  In addition, plaintiffs lack standing because their alleged injuries are not caused by an action by EPA and there is no effective remedy the Court can provide against EPA.

## I.   THE COURT LACKS JURISDICTION BECAUSE THERE IS NO FINAL AGENCY ACTION BY EPA

Plaintiffs have invoked the waiver of sovereign immunity in the Administrative Procedure Act, which is limited to review of "final agency action."  5 U.S.C. § 704; *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 800 (9th Cir. 2013).  A reviewable "agency action" under the APA is defined as "the whole or part of an agency rule, order license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C.

No. 2:14-cv-01667-ABC-CW
Memorandum in Support of Federal Defendants' Motion for Partial Dismissal

14

§ 551(13); *Wild Fish Conservancy*, 730 F.3d at 800.  As the Ninth Circuit

has stated, "While this definition is 'expansive,' federal courts have 'long

recognized the term [agency action] is not so all-encompassing as to

authorize us to exercise judicial review over everything done by an

administrative agency.'"  *Wild Fish Conservancy*, 730 F.3d 800-01, quoting

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C.

Cir. 2006).

The standard for determining whether an agency action is final was

established by the Supreme Court in *Bennett v. Spear*, 520 U.S. 154, 177-78

(1997).  *See, e.g., City of San Diego v. Whitman,* 242 F.3d 1097, 1101 (9th

Cir. 2001).  To be final and reviewable, an agency action:  (1) must mark the

consummation of the agency's decision-making process; and (2) must be an

action by which rights or obligations have been determined or from which

legal obligations flow.  *Id.*

The only EPA action identified in the Complaint is a letter dated

August 9, 2011, from EPA to the Corps, in which EPA states that, in light of

modifications that had been made to the draft permit, EPA's Regional

Administrator would not seek higher level review of the draft permit by the

EPA Assistant Administrator.  ECF No. 28 ¶¶ 87, 106.  The letter is neither

reviewable "agency action" nor final.  It is not "agency action" because it is

not a rule, order, or any of the other categories within the APA's definition of "agency action." *See* 5 U.S.C. § 551(13).  Rather, the letter is simply a summary of the consultation process between EPA and the Corps, which by inter-agency agreement is part of the Corps' administrative process for evaluating a section 404 permit application.

Similarly, EPA's letter is not "final" agency action because it does not determine rights or obligations.  The letter is simply one step in the process of the Corps' evaluation and decision on a permit application.  The letter does not alter the Corps' authority to issue the permit and does not remove "the sole remaining barrier" to the Corps' issuance of the permit, as alleged by Plaintiffs.  ECF No. 28 ¶ 106.  Although the MOA provides that the Corps will not issue the permit during a period of 10 days unless it contains a condition that no activity may take place pursuant to the permit until such 10th day or pending the outcome of EPA's Section 404(c) proceeding if initiated during the 10 day period, the Corps retains the authority to issue permits.  MOA ¶¶ I.1, IV.3(g)-(h).   While EPA has statutory authority to veto a Corps permit, such a decision requires a separate notice and comment process conducted by EPA, 40 C.F.R. §§ 231.3, 231.4, and is rarely invoked.  In fact, EPA has only utilized its veto authority 13 times in the more than 40 years it has had that authority.

Furthermore, EPA's August 9, 2011 letter is not, as Plaintiffs have mischaracterized it, a decision not to veto the permit.  *See* ECF No. 28 ¶ 106.  Rather, it is simply an acknowledgment by EPA that the Corps has adequately addressed EPA's concerns about the permit.  As described above, EPA and the Corps have agreed upon a process by which EPA has an opportunity to review and comment on public notices, and, in limited situations, draft section 404 permits.  The process is a consultative one, not a decision-making one, and the August 2011 letter summarizes the results of that consultation.  If EPA wished to consider a veto of the permit, it would have to engage in the more formal process prescribed by EPA regulations, including formal consultation with the Corps and others, public notice and comment, and opportunity for a public hearing.  33 U.S.C. § 1344(c); 40 C.F.R. § 231.3.  Accordingly, the letter makes no substantive change in the legal landscape, and thus is not final agency action reviewable under the APA.

## II.    THE COURT LACKS JURISDICITON BECAUSE EPA'S DECISION WHETHER TO EXERCISE ITS VETO AUTHORITY IS COMMITTED TO AGENCY DISCRETION BY LAW

Plaintiffs' claim against EPA should also be dismissed because the waiver of sovereign immunity in the APA specifically excludes agency action that "is committed to agency discretion by law."  5 U.S.C.

No. 2:14-cv-01667-ABC-CW
Memorandum in Support of Federal Defendants' Motion for Partial Dismissal

§ 701(a)(2).  *See Heckler v. Chaney*, 470 U.S. 821, 828 (1985) ("before any review at all may be had, a party must first clear the hurdle of § 701(a).") The Supreme Court has explained that section 701(a)(2) applies "in those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993), quoting *Heckler*, 470 U.S. at 830.  In *Heckler*, the Court held that an agency's decision not to institute investigative or enforcement proceedings is presumptively unreviewable, 470 U.S. at 838.  In *Lincoln*, the Court similarly held that an agency's allocation of funds from a lump-sum appropriation, including an agency's determination to terminate a previously funded program, is not reviewable.  508 U.S. at 193.  The Court found that both of these types of decisions involved a complicated balancing of factors particularly within the agency's expertise, including the determination of how to most effectively allocate the agency's resources.  *Lincoln*, 508 U.S. at 193; *Heckler*, 470 U.S. at 831.

Section 404(c), like the standards at issue in *Heckler* and *Lincoln*, contains no meaningful standard against which to judge the agency's exercise of discretion and requires a complex balancing of factors within the expertise of the agency, including allocation of the agency's resources. The

language of section 404(c) is entirely discretionary.  It states that EPA "*is authorized*" to prohibit the specification of an area as a disposal site and "*is authorized*" to deny or restrict the use of any defined area for specification "whenever [the Administrator] determines, after notice and the opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas."  33 U.S.C. § 1344(c) (emphasis added).  The statute does not say that EPA "shall" prohibit specification or "must" prohibit specification if it makes the threshold finding of "unacceptable adverse effect," but only that EPA is "authorized" to do so.  The Supreme Court has interpreted the phrase "is authorized to" as indicating discretionary language. *See Heckler*, 470 U.S. at 835.

        In response to the motions to dismiss the original complaint filed by the Federal Defendants and Intervenor Newhall Land and Farming Company on July 11, 2014, Plaintiffs amended their Complaint to assert that in making the alleged decision not to veto the Corps permit, EPA applied Clean Water Act section 1344(c), its section 1344(c) procedures, and the Section 404(b)(1) guidelines.  ECF No. 28 ¶ 106.  None of these provisions, however, provides standards to govern EPA's exercise of its section 1344(c)

authority.  The section 1344(c) regulations are procedural, and moreover, specifically state that if the Regional Administrator has reason to believe that a discharge may result in an unacceptable adverse effect, he or she "*may*" initiate that process.  40 C.F.R. § 231.3(a) (emphasis added).  Finally, while EPA may consider compliance with the Section 404(b)(1) Guidelines in the section 1344(c) process, nothing in the Guidelines requires that EPA take any specific action under section 1344(c) as a result of its analysis of compliance with the Guidelines.

The Clean Water Act thus leaves entirely to EPA's discretion the decision whether to initiate the process to veto a Corps permit, even if it makes a threshold finding of "unacceptable adverse effect."  Furthermore, the statute provides no standards or criteria for evaluating EPA's exercise of that discretion, nor does it identify the factors that EPA must or should consider.  Because the statute does not provide a meaningful standard for judicial review of EPA's decision not to veto a permit, it does not fall within the waiver of sovereign immunity provided by the APA.  *Serrato v. Clark*, 486 F.3d 560, 568-69 (9th Cir. 2007) (where statute provided that Bureau of Prisons "may" place prisoners in "boot camp" as an alternative to incarceration, agency's decision to eliminate program was committed to agency discretion by law and not subject to judicial review); *Ruff v. Hodel*,

770 F.2 839, 842 (9th Cir. 1985) (no law to apply to determination of membership when statute simply said that such proof must be "satisfactory to the Secretary"); *Rank v. Nimmo*, 677 F.2d 692, 699-700 (9th Cir. 1982) (no law to apply when statute provided that the Veterans Administration "may" take assignment of loans in default).

Congress' broad grant of discretion to EPA in section 404(c) is consistent with EPA's role in implementing the section 404 permitting program. The Clean Water Act authorizes the Corps to issue permits for the discharge of dredged or fill material into waters of the United States. 33 U.S.C. § 1344(a). Section 404(b) requires EPA to develop, in conjunction with the Corps, guidelines for use in determining whether to grant a permit for a discharge of dredged or fill material. Section 404(c) gives EPA authority to veto the use of a specific site for such discharges. *Coeur Alaska,* 557 U.S. at 274. Congress' granting of permitting authority to the Corps makes it obvious that it never intended EPA to conduct duplicative parallel proceedings on every permit application. Congress therefore committed the decision whether to invoke its 404(c) authority to EPA's discretion.

The courts have addressed this issue have predominantly determined that EPA's authority to veto a Corps section 404 permit is committed to its

discretion.  In *City of Olmsted Falls v. EPA*, 266 F. Supp. 2d 718 (N.D. Ohio 2003), the court held that because EPA is "authorized" to veto a section 404 permit, its unexercised authority is discretionary and not subject to review under the APA.  *Id.* at 723-24.  The same conclusion was reached in *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 915 F. Supp. 378, 381 (N.D. Ga. 1995), aff'd 87 F.3d 1242 (11th Cir. 1996).  The court in *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692, 699 (W.D. Wash. 1996), rejected a similar claim.  The one court to reach a different conclusion is *Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1 (D.C.C. 2007), which held that the fact that EPA is authorized to veto a permit whenever it determines that a discharge will have an unacceptable adverse effect provides guidance to assist the court in determining whether the agency abused its discretion.  *Id.* at 7-8.[2]  That conclusion, however, confuses the ultimate decision as to whether to veto a permit with the threshold finding of unacceptable adverse effect.  Nothing in the statute requires EPA to "veto" a permit if it finds an

---

[2]  The court also suggested that EPA's regulations might provide law to apply.  515 F. Supp. 2d at 8 n.6.  However, while EPA has promulgated regulations governing the procedures the Agency will follow should it choose to initiate a proceeding to veto a Corps permit, as noted above, those regulations specifically state that if the Regional Administrator has reason to believe that a discharge may result in an unacceptable adverse effect, he or she "*may*" initiate that process.  40 C.F.R. § 231.3(a) (emphasis added).

unacceptable adverse effect.  It does not say "shall," "will," or "must."

Rather, it says only that EPA is *authorized* to veto a permit if it makes that

finding, without more, committing the decision to EPA's discretion.  Thus,

*Olmsted Falls, et al.*, are the better reasoned opinions, and the claim against

EPA should be dismissed for lack of jurisdiction.

## III.   PLAINTIFFS LACK STANDING BECAUSE PLAINTIFFS' ALLEGED INJURIES ARE NOT CAUSALLY RELATED TO ANY ACTION BY EPA AND THERE IS NO MEANINGFUL RELIEF THE COURT CAN ORDER AGAINST EPA

To establish standing with respect to their claim against EPA,

Plaintiffs must demonstrate that (1) EPA's alleged action has resulted in an

injury-in-fact that is both concrete and particularized and actual or imminent

rather than conjectural or hypothetical; (2) there is a causal connection

between the claimed injury and EPA's alleged action, and that the injury is

not the result of the independent action of some third party; and (3) it is

likely, as opposed to merely speculative, that the injury will be redressed by

a favorable decision against EPA.  *Lujan*, 504 U.S. at 560-61.

Here, Plaintiffs allege that they will suffer harm as a result of  the

discharges to waters of the United States authorized by the permit issued by

the Corps.  While EPA commented on the permit, neither approval of the

permit by EPA nor a formal determination by EPA not to veto the permit is a

necessary prerequisite for the Corps to issue the permit.  Thus, EPA is not

the cause of Plaintiffs' alleged harm.  Furthermore, "vacating" EPA's alleged decision, as requested by Plaintiffs, ECF No. 28 at page 41, will not likely lead to the recission and denial of the permit by the Corps, and thus will not remedy Plaintiffs' alleged harm.

Furthermore, even if the permit were reopened, that would not necessarily lead EPA to exercise its section 404(c) veto authority.  Nor can the Court compel EPA to veto the permit or even to initiate the formal process for consideration of a veto.  *Norton*, 542 U.S. at 63 (only actions that are legally required may be compelled under the APA); see also *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1249 (11th Cir. 1996) ("By statute, the Administrator is authorized rather than mandated to overrule the Corps.").  Accordingly, there is no meaningful relief against EPA that the Court can grant Plaintiffs.

## CONCLUSION

For the reasons described above, Plaintiffs' claim against EPA should be dismissed.

Respectfully submitted this 1st day of August, 2014.

SAM HIRSCH
Acting Assistant Attorney General

/S/ Norman L. Rave, Jr.
NORMAN L. RAVE, JR.
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 616-7568 (tel.)
(202)  514-8865 (fax)
Norman.Rave@usdoj.gov

DEVON LEHMAN McCUNE
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO  80202
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2014 I filed the foregoing Motion for Partial Dismissal and Incorporated Memorandum of Law with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in this matter.

DATED this 1st day of August, 2014.

/s/ Norman L. Rave, Jr.
Norman L. Rave, Jr.