GATZKE DILLON & BALLANCE LLP
MARK J. DILLON (SBN 108329)
mdillon@gdandb.com
DAVID P. HUBBARD (SBN 148660)
dhubbard@gdandb.com
2762 Gateway Road
Carlsbad, California 92009
Telephone: (760) 431-9501
Facsimile: (760) 431-9512

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
ROBERT J. URAM (SBN 122956)
ruram@sheppardmullin.com
JAMES F. RUSK (SBN 253976)
jrusk@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415.434.9100
Facsimile:   415.434.3947

Attorneys for Defendant-Intervenor

(See next page for additional counsel)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, et al., <br><br> Defendants. | Case No. 2:14-cv-01667-ABC-CW <br><br> **DEFENDANT-INTERVENOR'S NOTICE OF MOTION, MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM, AND MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **[Fed. R. Civ. P 12(b)(1) and 12(b)(6)]** |
| THE NEWHALL LAND AND FARMING COMPANY, a California Limited Partnership, <br><br> Defendant-Intervenor. | Date:    September 8, 2014 <br> Time:    10:00 am <br> Ctrm.:   680 <br><br> Action Filed: March 6, 2014 |

SMRH:428079195.6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORRISON AND FOERSTER LLP
MIRIAM A. VOGEL (SBN 67822)
mvogel@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5929
Facsimile: (213) 892-5454

Co-Counsel for Defendant-Intervenor

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................... 1

II.   STANDARD OF REVIEW ...................................................................... 2

   A.   FRCP 12(b)(1) ............................................................................. 2

   B.   FRCP 12(b)(6) ............................................................................. 3

III.   FACTS .................................................................................................... 4

IV.   LEGAL BACKGROUND ........................................................................ 5

   A.   The Corps' and the EPA's roles under section 404. ................... 5

   B.   Section 404(q) and the memoranda of agreement. .................... 9

      1.   The 404(q) Memorandum between the Corps and the EPA. ..... 10

      2.   Permit elevation procedures under the 404(q) Memorandum. .................................................................. 11

      3.   The EPA's exercise of its section 404(c) authority after elevation. ................................................................ 11

   C.   Judicial review of final agency action. ..................................... 11

V.   ARGUMENT ......................................................................................... 12

   A.   The EPA has not taken final agency action under section 404(c). ....... 13

      1.   The EPA's section 404(q) letter did not make a determination under section 404(c). ........................... 14

      2.   The failure to veto the permit is not final agency action. ........... 15

   B.   Plaintiffs have an adequate remedy in their challenge to the Corps' issuance of the 404 permit. ..................................... 17

   C.   The EPA's decision whether to initiate section 404(c) proceedings is committed to agency discretion by law. ..................... 17

      1.   Agency enforcement decisions are presumptively excluded from judicial review. ...................................... 17

      2.   Congress has not limited the EPA's discretion in deciding whether to initiate section 404(c) proceedings. .......................... 19

      3.   Several courts have concluded that the EPA's failure to exercise the section 404(c) power is not reviewable. ................. 21

VI.   CONCLUSION ...................................................................................... 25

1

## TABLE OF AUTHORITIES

2

Page(s)

3

## FEDERAL CASES

4

*Abbott Laboratories v. Gardner*
  387 U. S. 136 (1967) ................................................................ 17

5

6

*Alaska Fish and Wildlife Conservation Fund, Inc., v. Dunkle*
  829 F.2d 933 (9th Cir. 1987) ................................................... 12

7

8

*Alliance to Save the Mattaponi v. U.S. Army Corps of Engineers*
  515 F.Supp.2d 1 (D.D.C. 2007).................................... 15, 22, 23, 24

9

*Alliance to Save the Mattaponi v. United States Army Corps of Engineers*
  606 F.Supp.2d 121 (D.D.C. 2009)......................................... 23

10

11

*Auer v. Robbins*
  519 U.S. 452 (1997) ....................................................... 15, 24

12

13

*Balistreri v. Pacifica Police Dept.*
  901 F.2d 696 (9th Cir. 1990) ...................................................... 3

14

15

*Belle Co., LLC, v. U.S. Army Corps of Eng'rs*
  No. 13-30262 (5th Cir. July 30, 2014) ................................... 17

16

17

*Bennett v. Spear*
  520 U.S. 154 (1997) ....................................................... 12, 16

18

19

*Cascade Conservation League v. M.A. Segale, Inc.*
  921 F.Supp. 692 (W.D. Wash. 1996) ....................... 6, 15, 16, 22

20

21

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*
  467 U.S. 837 (1984) ............................................................. 24

22

23

*City of Alma v. U.S.*
  744 F.Supp. 1546 (S.D. Ga. 1990) ..................................... 6, 13

24

25

*City of Olmsted Falls v. U.S. Envtl. Protection Agency*
  266 F.Supp.2d 718 (N.D. Ohio 2003), *affirmed*, 435 F.3d 632 ............ 21, 22, 23

26

27

*Dunlop v. Bachowski*
  421 U. S. 560 (1975) ....................................................... 18, 19

28

<u>FEDERAL CASES (Cont'd)</u>

*Heckler v. Chaney*
    470 U.S. 821 (1985) ................................................................12, 18, 19, 21

*Her Majesty the Queen in Right of Ontario v. U.S. EPA*
    912 F.2d 1525 (D.C. Cir. 1990)..............................................................19

*James City County, Virginia v. EPA*
    12 F.3d 1330 (4th Cir. 1993) ...................................................................13

*Kokkonen v. Guardian Life Ins. Co. of America*
    511 U.S. 375 (1994) ...................................................................................2

*Mingo Logan Coal Co. v. United States EPA*
    714 F.3d 608 (D.C. Cir. 2013).....................................7, 11, 14, 16, 24

*Navarro v. Block*
    250 F.3d 729 (9th Cir. 2001) .....................................................................3

*Newport Galleria Group v. Deland*
    618 F.Supp. 1179 (D.D.C. 1985)...........................................13, 20, 23

*Pacific Gas & Elec. Co. v. F.E.R.C.*
    464 F.3d 861 (9th Cir. 2006) ...................................................................12

*Preserve Endangered Areas of Cobb's History, Inc. v.*
    *United States Army Corps of Engineers*
    915 F.Supp. 378 (N.D. Ga. 1995), *affirmed*, 87 F.3d 1242 ..............22

*Sackett v. Environmental Protection Agency*
    132 S.Ct. 1367 (2012) ................................................11, 12, 15, 16, 17

*Safe Air For Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004) ...........................................................2, 3, 14

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001), *amended*, 275 F.3d 1187 ................3, 14

*Thompson v. Davis*
    295 F.3d 890 (9th Cir. 2002), *cert. denied*, 538 U.S. 921 ..............3, 14

*Warren v. Fox Family Worldwide, Inc.*
    328 F.3d 1136 (9th Cir. 2003) ..........................................................3, 14, 20

1

## FEDERAL CASES (Cont'd)

2

*Western Mining Council v. Watt*
3
    643 F.2d 618 (9th Cir. 1981) ...................................................3, 14, 20

4
*Zixiang Li v. Kerry*
    710 F.3d 995 (9th Cir. 2013) ..................................................................3
5

6

## FEDERAL STATUTES, RULES & REGULATIONS

7

40 Code of Federal Regulations
8
    § 230 ...................................................................................................5, 20
    § 231 ..........................................................................................................6
9
    § 231.3(a) ....................................................................................6, 7, 20, 23
    § 231.3(a)(1) .........................................................................................6, 13
10
    § 231.3(a)(2) .........................................................................................7, 13
    § 231.3(b) ...............................................................................................13
11
    § 231.4(a) ..................................................................................................7
    § 231.4(b) ..................................................................................................7
12
    § 231.4(g) ...............................................................................................13
    § 231.5(c)(1) ........................................................................................7, 13
13
    § 231.5(e) ...............................................................................................13
    § 231.6 ...........................................................................................7, 13, 16
14

15
44 Federal Register Notices
    14578 (Mar. 13, 1979)...........................................................................14
16
    14579 (Mar. 13, 1979)...........................................................................14
17
    58076 (Oct. 9, 1979)...........................................................................6, 7
    58077 (Oct. 9, 1979)...............................................................................7
18
    58078 (Oct. 9, 1979)..................................................................6, 7, 20, 24
    58079 (Oct. 9, 1979).............................................................7, 8, 20, 21, 24
19
    58081 (Oct. 9, 1979).....................................................................9, 20, 21
20
    58082 (Oct. 9, 1979).................................................................15, 16, 20

21
5 U.S.C.
    § 701, *et seq.* ...........................................................................................1
22
    § 701(a).................................................................................2, 11, 12, 18
23
    § 701(a)(2) ..............................................................................................12
    § 704 ........................................................................................................11
24
    § 706(1).....................................................................................................12
    § 706(2).....................................................................................................12
25

26

27

28

SMRH:428079195.6

29 U.S.C.
    § 482 ...................................................................................................... 18

33 U.S.C.
    § 1344(a) ............................................................................................... 24
    § 1341(a)(1) ............................................................................................. 5
    § 1344(a) ............................................................................................ 5, 15
    § 1344(b)(1) ............................................................................................. 5
    § 1344(c) ................................................................................... 1, 6, 7, 19

Clean Water Act
    § 401 ......................................................................................................... 5
    § 404 ................................................................................................ *passim*
    § 404(b) ................................................................................................... 22
    § 404(c) ............................................................................................ *passim*
    § 404(f) ................................................................................................... 15
    § 404(q) ..................................................................................................... 9
    § 404(q) ..................................................................................................... 2
    § 404(q) ............................................................................................ *passim*
    § 505(a)(2) ............................................................................................. 22

Federal Rules of Civil Procedure
    Rule 12(b)(1) ................................................................................. ix, 2, 3
    Rule 12(b)(6) .................................................................................... ix, 3

Federal Water Pollution Control Act Amendments of 1972, Pub.L. 92-500, 86
    Stat. 816 ................................................................................................... 6

Local Rule 7-3 ...................................................................................... ix

Case No. 2:14-cv-01667-ABC-CW
NEWHALL'S MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that Intervenor-Defendant The Newhall Land and Farming Company (Newhall) hereby moves to dismiss Plaintiffs' first claim for relief against Defendants Environmental Protection Agency (EPA), EPA Administrator Gina McCarthy, and EPA Regional Administrator Jared Blumenfeld under Federal Rules of Civil Procedure sections 12(b)(1) and 12(b)(6).  This matter will be heard on September 8, 2014, at 10:00 a.m., or as soon thereafter as the parties may be heard, in Courtroom 680 of the United States District Court, Central District of California.

Newhall moves to dismiss Plaintiffs' first claim for relief against the EPA under FRCP 12(b)(6) on the ground that the claim fails to state a cause of action upon which relief can be granted because Plaintiffs have not alleged any unlawful action by the EPA or any action subject to judicial review.  Newhall moves to dismiss Plaintiffs' first claim for relief against the EPA under FRCP 12(b)(1) on the ground that the Court lacks subject matter jurisdiction over this claim because the EPA's failure to "veto" the U.S. Army Corps of Engineers' (Corps) issuance of a Clean Water Act section 404 permit to Newhall is not a final agency action and is committed to agency discretion by law.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 17, 2014, and July 24, 2014, and is based on this notice of motion and motion, the supporting memorandum of points and authorities,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SMRH:428079195.6

1  and all other papers and pleadings on record with this Court, and on such other

2  arguments as may be presented to the Court at the hearing of this matter.

3

4  Dated:  August 1, 2014

5                                    Respectfully submitted,

6

7                                    Mark J. Dillon
                                     David P. Hubbard
8                                    GATZKE DILLON & BALLANCE LLP

9                                    Robert J. Uram
10                                   James F. Rusk
                                     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
11

12                                   Miriam A. Vogel
                                     MORRISON & FOERSTER LLP
13

14                                   Attorneys for Defendant-Intervenor The Newhall Land
                                     and Farming Company
15

16                                   By  _____ /s/ James F. Rusk _____
17                                                     JAMES F. RUSK

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Section 404(c) of the Clean Water Act authorizes the EPA to veto any section 404 permit issued by the Corps, provided the EPA finds that the permit will cause an "unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas . . . , wildlife, or recreational uses."  33 U.S.C. § 1344(c).  The decision whether to exercise the veto power is committed wholly to the discretion of the EPA.  Because the veto power operates to overturn months or years of technical analysis by the Corps, it is an enforcement tool to be used sparingly.  The law does not require — and the Court cannot compel — the EPA to use the veto in any given instance, or at all.

Here, Plaintiffs seek an order vacating the EPA's alleged decision not to veto the section 404 permit the Corps issued for the Newhall Ranch Resource Management and Development Plan.  Compl., Prayer, ¶ 3.[1]  They allege that the EPA's decision was arbitrary, capricious and an abuse of discretion under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*  Compl., ¶ 106.  But the APA can provide no relief to Plaintiffs, because they have not alleged any action by the EPA that is subject to judicial review under the APA.

Because the EPA can decide to act under section 404(c) at any time — even years after the Corps issues a permit and even if it has not previously objected to the permit — the EPA's failure to exercise its section 404(c) authority is not a final agency action subject to judicial review under the APA.  To avoid this fact, Plaintiffs point to the EPA's August 9, 2011 letter to the Corps as evidence of a final decision under section 404(c).  Compl., ¶ 106.  But that letter stated that the EPA would not seek review of the Corps' permit decision at the Corps Headquarters level pursuant to the two agencies' 1992 Memorandum of Agreement under Clean Water

---

[1] All references to the complaint are to Plaintiffs' First Amended Complaint, ECF No. 28, filed on July 22, 2014.

Act section 404(q) (404(q) Memorandum).[2]  As we will explain below, the decision not to "elevate" a permit under the 404(q) Memorandum is separate from the EPA's decision whether to exercise its section 404(c) veto authority and does not constitute any action under section 404(c).

Even if the EPA's failure to initiate proceedings under section 404(c) amounted to a final agency action, it still would not be subject to review under the APA.  Plaintiffs already have an adequate remedy available in this court through their challenge to the Corps' issuance of the 404 permit.  In addition, the EPA's decision whether to act under section 404(c) is "committed to agency discretion by law," 5 U.S.C. § 701(a).  Neither the Clean Water Act nor the implementing regulations provide standards to constrain the EPA's exercise of its discretion under section 404(c) or to guide the courts in reviewing the exercise of that discretion. In such cases, the APA precludes judicial review.  *Id.*

Because Plaintiffs have not alleged any EPA action that is subject to judicial review, Plaintiffs' claim against the EPA should be dismissed.

## II.  STANDARD OF REVIEW

### A.      FRCP 12(b)(1).

A motion to dismiss under FRCP 12(b)(1) challenges the Court's subject matter jurisdiction over the claim.  As the party invoking this Court's jurisdiction, Plaintiff bears the burden of establishing subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

A jurisdictional attack pursuant to FRCP 12(b)(1) may be facial or factual.  *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.* at 1039.  In reviewing a

---

[2] The 404(q) Memorandum is available at
http://www.usace.army.mil/Missions/CivilWorks/RegulatoryProgramandPermits/MOUMOAs.aspx (last accessed July 31, 2014).

1  facial attack, the court must accept the allegations of the complaint as true.  *Id.*  But

2  the court need not accept as true legal conclusions, even if cast in the form of factual

3  allegations.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.

4  2003).  In a factual attack, "the challenger disputes the truth of the allegations that,

5  by themselves, would otherwise invoke federal jurisdiction," and the court may

6  consider evidence outside the pleadings.  *Safe Air*, *supra*, 373 F.3d at 1038-1039.

7  **B.     FRCP 12(b)(6).**

8       A motion to dismiss under FRCP 12(b)(6) tests the sufficiency of the

9  complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be

10  based on the lack of a cognizable legal theory or the absence of sufficient facts

11  alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*,

12  901 F.2d 696, 699 (9th Cir. 1990).

13       In reviewing a motion to dismiss under FRCP 12(b)(6), the Court assumes the

14  truth of all properly pleaded factual allegations and construe them in the light most

15  favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.

16  2002), *cert. denied*, 538 U.S. 921.  However, "[t]o survive a motion to dismiss, a

17  complaint must contain sufficient factual matter, accepted as true, to state a claim to

18  relief that is plausible on its face."  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir.

19  2013) (quotation marks and citation omitted).  Moreover, courts "do not . . . assume

20  the truth of legal conclusions merely because they are cast in the form of factual

21  allegations."  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

22  "Nor is the court required to accept as true allegations that are merely conclusory,

23  unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden*

24  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended*, 275 F.3d 1187.

25       Newhall brings this motion to dismiss under both FRCP 12(b)(1) and

26  FRCP 12(b)(6).

27

28

### III.  FACTS

The County of Los Angeles approved the Newhall Ranch Specific Plan development in 2003.  Compl., ¶ 77.  Newhall filed its application for a section 404 permit that year, seeking approval to place dredge and fill material into 93.3 acres of waters of the United States to facilitate the construction of the approved development.  *Id.*, ¶ 78.  In response to the Newhall application, the Corps prepared a draft and final environmental impact statement as required by the National Environmental Policy Act.  *Id.*, ¶¶ 81, 84.  Plaintiffs and the EPA, among others, submitted comments on that document.  *Id.*, ¶ 84.  The EPA also submitted two letters to the Corps initiating the permit elevation process under the agencies' Section 404(q) Memorandum; the letters stated that the Newhall project as originally proposed would have unacceptable adverse effects to aquatic resources of national importance.[3]  *Id.* ¶ 86.

After more than a decade of environmental review, including extensive input from the EPA, the Corps prepared a draft section 404 permit in which the Corps rejected Newhall's original application to fill 93.3 acres of waters of the United States and proposed to allow Newhall to fill only 47.9 acres.  Compl., ¶ 87, 88.  To compensate for the fill, the Corps' permit required Newhall to restore, enhance and establish 132.2 acres of waters of the United States, including 54.9 acres before any impacts to waters of the United States.  By a letter dated July 22, 2011, in accordance with the 404(q) Memorandum, the Corps provided the EPA with a notice of intent to issue the permit to Newhall and attached the draft permit for EPA review.  Compl., ¶ 87.

In response, EPA Regional Administrator Jared Blumenfeld sent a letter to the Corps on August 9, 2011, Compl., ¶ 87, explaining that the EPA would "not

---

[3] As explained below, the finding of unacceptable impacts to aquatic resources of national importance applies only to the section 404(q) process and is not a finding under section 404(c).

seek a higher level review of the draft permit at the EPA's Office of Water pursuant to paragraph 3(d)(1) of our agencies' Memorandum of Agreement (MOA) under Clean Water Act (CWA) Section 404(q)." *Id.*

On August 31, 2011, the Corps issued a provisional section 404 permit to Newhall. *Id.*, ¶ 88. The permit was contingent on Newhall obtaining certification from the State of California, acting through the Regional Water Quality Control Board, Los Angeles Region (Regional Board), that the permit complied with California water quality standards as required by section 401 of the Clean Water Act. *See* 33 U.S.C. § 1341(a)(1). The Regional Board issued its certification on September 14, 2012.[4] The Corps issued a final permit to Newhall on October 19, 2012. Compl., ¶ 89.

## IV. LEGAL BACKGROUND

**A.      The Corps' and the EPA's roles under section 404.**

Section 404 of the Clean Water Act authorizes the Corps to issue permits for the discharge of dredged or fill material into waters of the United States at "specified disposal sites." 33 U.S.C. § 1344(a). In issuing section 404 permits, the Corps must apply the regulations found at 40 C.F.R. Part 230, commonly known as the "404(b)(1) Guidelines." 33 U.S.C. § 1344(b)(1).

Although the Corps makes permitting decisions under section 404, the EPA has the power to veto a discharge to a disposal site if it makes certain findings:

> The [EPA] Administrator *is authorized* to prohibit the specification
> (including the withdrawal of specification) of any defined area as a
> disposal site, and he *is authorized* to deny or restrict the use of any

---

[4] The Regional Board's final certification/waste discharge requirements for the Project are available at http://www.waterboards.ca.gov/losangeles/water_issues/programs/401_water_quality_certification/Newhall/10-01-12/final%20Newhall%20WDR%20Sep%202012.pdf (last accessed on July 31, 2014).

defined area for specification (including the withdrawal of

specification) as a disposal site, *whenever* he determines, after notice

and opportunity for public hearings, that the discharge … will have an

unacceptable adverse effect on municipal water supplies, shellfish beds

and fishery areas …, wildlife, or recreational areas.  Before making

such determination, the Administrator shall set forth in writing and

make public his findings and his reasons for making any determination

under this subsection.

33 U.S.C. § 1344(c) (italics added).[5]  As the EPA explained in the preamble to the final regulations adopted under section 404(c), "one of the basic functions of 404(c) is to *police* the application of the 404(b)(1) guidelines."  44 Fed. Reg. 58076, 58078 (Oct. 9, 1979) (italics added).  In other words, the section 404(c) veto power provides the EPA with a mechanism for enforcing the Clean Water Act.  *See Cascade Conservation League v. M.A. Segale, Inc.*, 921 F.Supp. 692, 699 (W.D. Wash. 1996) (describing EPA section 404(c) vetoes as "enforcement decisions"); *City of Alma v. U.S.*, 744 F.Supp. 1546, 1556-1557 (S.D. Ga. 1990) ("The EPA has been delegated the responsibility of enforcing the Clean Water Act and protecting the public interest in this regard.").

The section 404(c) regulations, found at 40 C.F.R. Part 231, establish a process to be used if and when the EPA decides to exercise its enforcement power under section 404(c).  The Regional Administrator "*may* initiate" this process if he has reason to believe that an unacceptable adverse effect could result from a discharge to a disposal site.  40 C.F.R. § 231.3(a) (italics added).  If he decides to initiate the 404(c) process, the Regional Administrator first must notify the Corps, the applicant and the property owner.  40 C.F.R. § 231.3(a)(1).  If the Regional Administrator's concerns are not resolved within 15 days, he must publish notice of

---

[5] Added by Federal Water Pollution Control Act Amendments of 1972, Pub.L. 92-500, 86 Stat. 816.

his proposed determination to prohibit or restrict the discharge.  40 C.F.R. § 231.3(a)(2).  The proposed determination is not a finding that unacceptable adverse effects will occur; it simply "represents a judgment that the matter is worth looking into."  44 Fed. Reg. 58078.  The Regional Administrator must allow public comment on the proposed determination and may hold a public hearing.  40 C.F.R. § 231.4(a)-(b).

After the comment period, the Regional Administrator may decide to withdraw his proposed determination, in which case withdrawal marks the conclusion of the section 404(c) process and "constitute[s] final agency action." 40 C.F.R. § 231.5(c)(1).  Otherwise, the Regional Administrator forwards a recommended determination to the Administrator, who makes a final determination whether to veto the permit.  40 C.F.R. § 231.6.  The final determination, whether vetoing the permit or rescinding the recommended determination, "constitutes final agency action under section 404(c) of the Act."  *Id.*

The EPA interprets the word "whenever" in section 404(c) as authorizing it to exercise its section 404(c) power at any time — before a permit application is filed, while an application is pending, or after a permit has been issued.  44 Fed. Reg. 58076, 58077.  The District of Columbia Circuit recently affirmed this view, holding that the plain language of the statute authorizes the EPA to veto a permit at any time, even years after its issuance.  *Mingo Logan Coal Co. v. United States EPA*, 714 F.3d 608 (D.C. Cir. 2013).

But neither the Clean Water Act nor the EPA's regulations *require* the EPA to exercise its section 404(c) authority in any particular case or to take an affirmative action on each and every Corps permit application.  *See* 33 U.S.C. § 1344(c) ("is authorized"); 40 C.F.R. § 231.3(a) ("may initiate").  In adopting the section 404(c) regulations, the EPA made clear that in the vast majority of cases, it will take *no action* under 404(c); it simply will not initiate the process.  *See* 44 Fed. Reg. 58079 (stating that "404(c) proceedings will affect only a small fraction of permit

proceedings"); *id.* ("EPA does not expect that the 404(c) authority will be used very often."); *id.* at 58080 ("there are not expected to be many 404(c) actions").  In responding to comments on the proposed regulations, the EPA rejected a suggestion that it be required to state affirmatively that it had no objection before the Corps could issue a section 404 permit, since in the "vast majority of permits which are issued, EPA has no objections or its objections are resolved before the Corps announces its intention to issue the permit."  *Id.* at 58082.  The EPA explained that the proposed requirement "would result in a lot of unnecessary paperwork and would have a potential for delay."  *Id.*

The EPA has specifically determined that it has the discretion to take no action under section 404(c) — even when it believes that unacceptable adverse impacts may occur.  In its final rulemaking to promulgate the section 404(c) regulations, the EPA rejected suggestions that the regulations should require the Regional Administrator to initiate section 404(c) proceedings "immediately" if he has reason to believe that a discharge might have unacceptable impacts:

> This suggestion was rejected because it ignores the Regional Administrator's *necessary discretion in deciding when to act or whether to act at all.* He may believe that such impacts will occur but see no realistic prospect of proving a case. Or there may be instances where the Regional Administrator also has reason to believe that permitting authority will deny the permit. In such an instance, a 404(c) proceeding would be unnecessary. In addition, such a requirement would be hard to enforce, since the trigger is so *subjective.*

44 Fed. Reg. 58079 (italics added).

For the same reason, the EPA declined to include a procedure for petitioning the EPA to initiate section 404(c) actions, stating it could limit the EPA's discretion in allocating resources and setting priorities:

> [A] formal [petition] procedure might lead to the regional 404 staff
> being swamped with requests to protect valuable aquatic and wetland
> resources in advance of permit applications being filed.  However,
> because of limited manpower, EPA will have to focus first on areas
> which are in more immediate danger of destruction—*e.g.*, those
> covered by a pending application to discharge.

44 Fed. Reg. 58081.

Consistent with the interpretation set forth in its rulemaking, the EPA has rarely invoked its section 404(c) authority.  An EPA Fact Sheet on the section 404(c) process states, "Although the Corps processes approximately 60,000 permit actions per year, the EPA has used its Section 404(c) authority very sparingly, issuing only 13 final veto actions since 1972."[6]

**B.    Section 404(q) and the memoranda of agreement.**

In 1977, Congress added subdivision (q) to section 404 in order to make the Corps' permit-related consultations with other federal agencies more efficient.[7] Section 404(q), 33 U.S.C. § 1344(q), states in part:

> [T]he Secretary shall enter into agreements with the [EPA]
> Administrator, the Secretaries of the Departments of Agriculture,
> Commerce, Interior and Transportation, and the heads of other
> appropriate Federal agencies to minimize, to the maximum extent
> practicable, duplication, needless paperwork, and delays in the issuance
> of permits under this section.

The Corps has entered into agreements under section 404(q) with a variety of agencies, including the EPA, the U.S. Fish and Wildlife Service (FWS) and the

---

[6] U.S. EPA, Clean Water Act Section 404(c) "Veto Authority" Fact Sheet, *available at* http://water.epa.gov/lawsregs/guidance/cwa/dredgdis/upload/404c.pdf (last accessed on July 31, 2014).

[7] Clean Water Act of 1977, Pub. L. No. 95-217, 91 Stat. 1566.

National Marine Fisheries Service (NMFS).  The agreements with FWS and NMFS are nearly identical to the 404(q) Memorandum between the Corps and the EPA.[8] The section 404(q) agreements provide a process for resolving interagency disputes over individual permits.[9]  As explained below, this process is *separate* from the section 404(c) permit veto process.

**1.      The 404(q) Memorandum between the Corps and the EPA.**

The 404(q) Memorandum states that the Corps is "solely responsible" for determining compliance with the 404(b)(1) Guidelines and making final permit decisions under Clean Water Act section 404, but that the Corps will "fully consider" the EPA's views in deciding whether to issue a permit.  404(q) Memorandum, Part I:1-2.  The 404(q) Memorandum establishes coordination procedures and time limits for the EPA's submittal of comments to the Corps and for the Corps' consideration of those comments.  *See id.* at Part II.

Unlike section 404(c), which allows the EPA to consider effects on municipal water supplies, recreational uses, wildlife, fisheries and shellfish beds, the elevation of Corps permit decisions under the Section 404(q) Memorandum is limited to those permits that will result in "unacceptable adverse impacts to aquatic resources of national importance" after taking into account mitigation.  *Id.* at Part IV:1.  Like section 404(c), the 404(q) Memorandum imposes no mandatory duty on the EPA; it is not *required* to elevate any permit decision, even if it believes unacceptable adverse impacts will occur.  *See id.* at Part IV:3(d), (f).

---

[8] All three memoranda of agreement are available at http://www.usace.army.mil/Missions/CivilWorks/RegulatoryProgramandPermits/MOUMOAs.aspx (last accessed July 31, 2014).

[9] U.S. EPA, Clean Water Act "Section 404(q) Dispute Resolution Process" Fact Sheet, *available at* http://water.epa.gov/type/wetlands/outreach/upload/404q.pdf (accessed July 10, 2014).

### 2.    Permit elevation procedures under the 404(q) Memorandum.

To initiate the elevation process, the EPA Regional Administrator must notify the Corps District Engineer by letter that the EPA believes the discharge will have a substantial and unacceptable impact to aquatic resources of national importance. 404(q) Memorandum, Part IV:3(a)-(b); see Compl., ¶ 86.  If the District Engineer proposes to issue a permit contrary to the EPA's recommendation, he must notify the EPA of the proposed decision.  *Id.* at Part IV:3(c).  The EPA then must decide whether to request review of the permit decision by Corps Headquarters.  *Id.* Part IV:3(f).

### 3.    The EPA's exercise of its section 404(c) authority after elevation.

Under the 404(q) Memorandum, even when a permit decision is elevated, Corps Headquarters can override any EPA objection and decide to issue the permit. *Id.* Part IV:3(h).  But if that occurs, the "EPA reserves the right to proceed with Section 404(c)."  *Id.*[10]  The EPA also reserves to itself the right to proceed under section 404(c) in cases where it has *not* elevated the permit decision under the Section 404(q) Memorandum.  *See Mingo Logan Coal*, *supra*, 714 F.3d at 610, 616. Thus, the EPA's decision whether to elevate a permit under the 404(q) Memorandum is distinct from its decision whether to invoke the section 404(c) process and does not constrain that decision.

### C.    Judicial review of final agency action.

The APA provides for judicial review of "actions made reviewable by statute and final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, except where "statutes preclude judicial review" or "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a).  The Supreme Court has established a two-pronged test to identify "final agency action."  *Sackett v. Environmental Protection Agency*, 132 S.Ct. 1367, 1371 (2012).  First, the action

---

[10] FWS and NMFS have no authority under section 404(c), and therefore the FWS and NMFS Memoranda do not contain this provision.

1  must "mark the consummation of the agency's decisionmaking process — it must

2  not be of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S.

3  154, 178 (1997) (citation and quotation marks omitted); *see also Sackett*, 132 S.Ct.

4  at 1372.  Second, "the action must be one by which rights or obligations have been

5  determined, or from which legal consequences will flow." *Bennett* at 178 (citation

6  and quotation marks omitted); *see also Sackett* at 1371–1372.

7          However, even *final* agency action is not subject to judicial review where it is

8  committed to agency discretion by law.  5 U.S.C. § 701(a).  That occurs when the

9  statute provides no clear standards to guide the agency's exercise of discretion or for

10  the courts to apply in reviewing the agency's decisions.  *Heckler v. Chaney*,

11  470 U.S. 821, 830-831 (1985).  Courts have repeatedly held that an agency's

12  decision whether to initiate enforcement proceedings "is a decision generally

13  committed to an agency's absolute discretion" and "should be presumed immune

14  from judicial review under § 701(a)(2)." *Heckler* at 831; *see also, e.g., Pacific Gas

15  & Elec. Co. v. F.E.R.C.,* 464 F.3d 861, 866-867 (9th Cir. 2006) (no jurisdiction to

16  review non-enforcement decision by F.E.R.C.); *Alaska Fish and Wildlife

17  Conservation Fund, Inc., v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) (no

18  jurisdiction to review U.S. Fish and Wildlife Service decision not to enforce closed

19  hunting season under Migratory Bird Treaty Act).

20          Plaintiffs allege that the EPA made a decision not to veto the Corps permit

21  and ask this Court to set aside that decision as "arbitrary and capricious" under

22  5 U.S.C. section 706(2).  *See* Compl., ¶ 106.  Plaintiffs have not alleged EPA

23  *inaction* or asked the Court to compel agency action unreasonably withheld under

24  5 U.S.C. section 706(1).  *Id.*

25                              **V.  ARGUMENT**

26          Plaintiffs' claim against the EPA must be dismissed because it does not meet

27  the threshold requirements for judicial review.  **First**, Plaintiffs have failed to

28  identify any final agency action taken under section 404(c).  The only EPA action

1  Plaintiffs identify is the section 404(q) letter dated August 9, 2011.  That letter

2  cannot be construed as a final decision by the EPA under section 404(c).  ***Second***,

3  even if the EPA had made a final decision not to initiate veto proceedings under

4  section 404(c), that decision would not be reviewable under the APA because

5  Plaintiffs already have an adequate remedy in court: their challenge to the Corps'

6  issuance of the 404 permit.  ***Third***, the Court lacks jurisdiction to review the EPA's

7  decision not to initiate section 404(c) proceedings because that decision is

8  committed to the EPA's discretion by law.

9  **A.     The EPA has not taken final agency action under section 404(c).**

10          Plaintiffs have not identified any action by the EPA that constitutes an

11  exercise of its section 404(c) authority, let alone a *final* agency action.  To date, the

12  EPA has not even performed the threshold steps required to initiate the

13  section 404(c) process.  For example, the EPA has not notified the Corps, published

14  a proposed determination, given public notice, or invited comment.  *See* 40 C.F.R.

15  §§ 231.3(a)(1)-(2), 231.3(b), 231.4(g), 231.5(e).  Nor has the EPA performed either

16  of the final steps that can conclude the 404(c) process, *and which the regulations*

17  *define as final agency action*: withdrawal of a proposed determination or issuance of

18  a final determination.  40 C.F.R §§ 231.5(c)(1), 231.6.  The situation here is very

19  different from a situation in which the EPA initiated the section 404(c) process,

20  conducted a hearing, and made a final, reviewable determination either to veto or

21  not to veto the permit based on an administrative record.  *See*, *e.g.*, *James City*

22  *County, Virginia v. EPA*, 12 F.3d 1330 (4th Cir. 1993); *City of Alma*, *supra*,

23  744 F.Supp. 1546.  *See also Newport Galleria Group v. Deland*, 618 F.Supp. 1179,

24  1185 (D.D.C. 1985) (finding no final agency action where the EPA had formally

25  *initiated* the 404(c) process but had not yet made a final determination).

26

27

28

1.     **The EPA's section 404(q) letter did not make a determination under section 404(c).**

Plaintiffs allege that the EPA made a "decision not to deny, prohibit or restrict the Section 404 Permit" under section 404(c) through its August 9, 2011 letter stating that the EPA would not seek elevation of the Corps' permit decision under the 404(q) Memorandum.  Compl., ¶ 106.  As a matter of law, this allegation is insufficient to state a claim against the EPA defendants.  As explained above, the EPA's decision not to seek *elevation* of the permit under section 404(q) was not a decision whether to exercise its section 404(c) veto authority and did not foreclose the option of exercising that authority at a later time.  The EPA can veto a permit years after its issuance, even if it did not seek elevation of the Corps' decision to grant the permit.  *See Mingo Logan Coal*, *supra*, 714 F.3d at 610, 616.  By conflating section 404(q) with section 404(c), Plaintiffs make the exact mistake the EPA warned against in issuing the proposed section 404(c) regulations: "The [EPA] Administrator's section 404(c) authority should not be confused with the right to comment on and object to permit applications."  44 Fed. Reg. 14578, 14579 (Mar. 13, 1979).

In deciding this motion to dismiss, this Court accepts as true Plaintiffs' factual allegation that the EPA sent a letter to the Corps on August 9, 2011, stating that the EPA would "not seek a higher level review of the draft permit at the EPA's Office of Water pursuant to paragraph 3(d)(1) of our agencies' Memorandum of Agreement (MOA) under Clean Water Act (CWA) Section 404(q)," Compl., ¶ 106. *Thompson*, *supra*, 295 F.3d at 895; *Safe Air For Everyone*, *supra*, 373 F.3d at 1038. But this Court does not assume the truth of Plaintiffs' *legal conclusion* that the EPA's decision not to elevate the permit constituted an exercise of its section 404(c) veto power, *see* Compl., ¶¶ 18, 106.  *Warren*, *supra*, 328 F.3d at 1139; *Western Mining Council*, *supra*, 643 F.2d at 624.  *See also Sprewell*, *supra*, 266 F.3d at 988

1    (court not required to accept unreasonable legal inferences or unwarranted factual

2    deductions).

3            **2.        The failure to veto the permit is not final agency action.**

4            Plaintiffs have not alleged facts showing that the EPA took any action under

5    section 404(c).  Although one court has construed the EPA's *inaction* in failing to

6    initiate section 404(c) proceedings as "essentially a decision (*i.e.*, an action) to

7    indirectly approve a permit" that had "the same impact as agency action," *Alliance*

8    *to Save the Mattaponi v. U.S. Army Corps of Engineers*, 515 F.Supp.2d 1, 9 (D.D.C.

9    2007), that interpretation conflicts with the plain language of the Clean Water Act.

10   The Act vests the Corps, not the EPA, with the authority to approve section 404

11   permits.  *See* 33 U.S.C. § 1344(a).  *Mattaponi* also implies that the EPA has a duty

12   to take an affirmative action on every one of the Corps' 60,000 permit decisions

13   annually — a position the EPA expressly rejected in promulgating the

14   section 404(c) regulations.  44 Fed. Reg. 58082 (EPA preamble to regulations).  The

15   *Mattaponi* court did not consider the EPA's contemporaneous interpretation of its

16   own regulations, which is entitled to substantial deference.  *See Auer v. Robbins*,

17   519 U.S. 452, 462 (1997).

18           Even if this Court construes the EPA's inaction here as agency action, not

19   every agency action is subject to judicial review — only final agency action is

20   reviewable.  *See Sackett*, *supra*, 132 S.Ct. at 1371.  *Mattaponi* does not address the

21   question of finality.  *See* 515 F.Supp.2d at 8-9.

22           Significantly, a district court in this Circuit has considered a closely related

23   question and found no final agency action where the EPA failed to exercise its

24   section 404(c) authority to reverse the Corps' determination that a project was

25   subject to the Clean Water Act section 404(f) "normal farming" exception, allowing

26   fill of wetlands without a section 404 permit.  *See Cascade Conservation League,*

27   *supra*, 921 F.Supp. at 699.  In *Cascade*, the Corps had issued a letter stating that the

28   exception applied and that the Corps would take no further action unless the project

activities changed or the Corps received new information. *Id.* at 699-700. The plaintiff claimed the Corps' decision "could be the last word" on the project and thus both the Corps' decision and the EPA's failure to reverse that decision were final agency action. *Id.* at 700. The court disagreed, ruling that "the fact that the agency may not take further action does not necessarily mean that the agency's decision is reviewable under the APA." *Id.*

In this case too, the EPA's failure to veto the Corps permit in 2011 *could be* the agency's "last word" on the Newhall project. *Id.* But it still lacks any "hallmarks of APA finality," *Sackett*, *supra*, 132 S.Ct. at 1371, and fails to satisfy either of the two finality prongs. First, it was not the "consummation of the agency's decisionmaking process." *Id.* at 1372; *see also Bennett*, *supra*, 520 U.S. at 178. The EPA has not even initiated the section 404(c) decision-making process to date, let alone consummated it. *See* 40 C.F.R §§ 231.5(c)(1), 231.6 (defining withdrawal of a proposed determination or issuance of a final determination as final agency action). 40 C.F.R §§ 231.5(c)(1), 231.6. But the EPA retains the authority to consider additional information and to begin 404(c) proceedings at any time. *See Mingo Logan Coal*, *supra*, 714 F.3d at 616.

Second, the EPA's failure to veto the Corps permit also is not an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, supra, 520 U.S. at 178. Newhall's rights and obligations were determined by the Corps' issuance of the section 404 permit, which did not require any action by the EPA under section 404(c) to become valid. *See* 44 Fed. Reg. 58082 (EPA regulatory preamble, rejecting a suggestion that the EPA be required to state affirmatively that it did not object before the Corps could issue a section 404 permit). Nor did the EPA's failure to veto the permit in 2011 preclude future action under section 404(c). *Mingo Logan Coal*, *supra*, 714 F.3d at 616. It was a non-action, without legal consequences.

**B.   Plaintiffs have an adequate remedy in their
challenge to the Corps' issuance of the 404 permit.**

Even assuming for the sake of argument that the EPA's failure to initiate section 404(c) proceedings was final agency action, it would not be subject to judicial review under the APA.  "The APA's judicial review provision also requires that the person seeking APA review of final agency action have 'no other adequate remedy in court.'" *Sackett*, *supra,* 132 S. Ct. at 1372 (quoting 5 U.S.C. § 704).  Here, Plaintiffs have an adequate remedy for their alleged injuries flowing from the issuance of a section 404 permit to Newhall: they have challenged the Corps' issuance of that permit.  *See* Compl., ¶ 105, Prayer, ¶¶ 1-2.  Plaintiffs' claim against the EPA adds nothing to their remedies and would only "disrupt the regulatory review system already in place."  *Belle Co., LLC, v. U.S. Army Corps of Eng'rs*, No. 13-30262, slip op. at 15, 16 n.6 (5th Cir. July 30, 2014) (holding that the Corps' issuance of a jurisdictional determination was not final agency action and that the plaintiff may have an adequate judicial remedy "because it could apply for a Corps permit and, if the Corps denies the permit, challenge the denial and the underlying jurisdiction in court").

**C.   The EPA's decision whether to initiate section 404(c)
proceedings is committed to agency discretion by law.**

There is a second reason why, even if the EPA had made a final decision not to initiate section 404(c) proceedings against the Corps permit, it would not be subject to judicial review.  The EPA's decision whether to exercise its enforcement authority under section 404(c) is committed to its discretion by law.

**1.   Agency enforcement decisions are presumptively
excluded from judicial review.**

There is a "general presumption that all agency decisions are reviewable under the APA." *Abbott Laboratories v. Gardner*, 387 U. S. 136, 139-141 (1967).  But the APA carves out exceptions to this presumption where review is precluded

by statute or "committed to agency discretion by law."  5 U.S.C. § 701(a).  The "committed to agency discretion by law" exception is narrow and limited to situations where the substantive statute provides the courts with "no law to apply." *Chaney*, *supra*, 470 U.S. at 831-832.  The Supreme Court has held, however, that an agency's decision not to initiate enforcement action normally fits within this exception and is presumptively non-reviewable under the APA, because it involves a balancing of factors that are uniquely within the agency's expertise and unsuitable for judicial review.  *Id.* at 831-832.  These factors include:

> [W]hether a violation has occurred, … whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. *An agency generally cannot act against each technical violation of the statute it is charged with enforcing.*

*Id.* (italics added).

Congress may overcome the presumption of non-reviewability by limiting the agency's exercise of the enforcement power, "either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue."  *Id.* at 833-834.  As an example, *Chaney* cited the Supreme Court's decision in *Dunlop v. Bachowski*, 421 U. S. 560 (1975).  In *Dunlop*, the statute provided that, upon receiving a complaint regarding a union election, the Secretary of Labor "*shall* investigate such complaint and, if he finds probable cause to believe that a violation . . . has occurred . . . he *shall* . . . bring a civil action." *Dunlop* at 563 n. 2 (quoting 29 U.S.C. § 482) (italics added).  The Court of Appeals had held the decision whether to bring a civil action was not committed to agency discretion because the statute *required* the Secretary to bring an action when certain "clearly defined" factors were present.  *Chaney*, 470 U.S. at 834 (quoting *Bachowski*

1   v. *Brennan*, 502 F.2d 79, 87-88 (3rd Cir. 1974)).  The *Dunlop* Court affirmed.

2   *Dunlop*, 421 U.S. at 567 n. 7; *see Chaney* at 834.  *Chaney* characterized the statute

3   in Dunlop as one that "clearly withdrew discretion from the agency and provided

4   guidelines for exercise of its enforcement power."  *Chaney* at 834.

5       In *Chaney*, however, the Food Drug and Cosmetics Act "provided only that

6   '[t]he Secretary is *authorized* to conduct examinations and investigations.'"  *Id.* at

7   835 (italics in original).  The Court concluded that this permissive grant of

8   enforcement power, unlike the mandatory language in *Dunlop*, did not sufficiently

9   constrain the Secretary's enforcement discretion to make a decision not to enforce

10  reviewable by the courts.  *Id.  See also Her Majesty the Queen in Right of Ontario v.*

11  *U.S. EPA*, 912 F.2d 1525 (D.C. Cir. 1990) (Agency inaction was reviewable

12  because the statute provided that whenever the Administrator had reason to believe

13  that an air pollutant emitted in the United States could endanger health or welfare in

14  a foreign country, he "*shall* give formal notification thereof to the Governor of the

15  State in which such emissions originate.").

16      **2.    Congress has not limited the EPA's discretion in**
17      **deciding whether to initiate section 404(c) proceedings.**

18      Clean Water Act section 404(c) provides a broad and permissive grant of

19  authority to the EPA, similar to that considered by the Court in *Chaney*.  Section

20  404(c) states that the Administrator "is *authorized* to prohibit the specification . . . of

21  any defined area as a disposal site, and he is *authorized* to deny or restrict the use of

22  any defined area for specification . . . as a disposal site," whenever he determines

23  that a discharge will have unacceptable adverse effects.  33 U.S.C. § 1344(c) (italics

24  added).  Unlike the statutes at issue in *Dunlop* and *Her Majesty the Queen*,

25  section 404(c) does not state that the Secretary "shall" prohibit or withdraw any

26  specification, or that he is required to deny or restrict the use of any area.  *See*

27  *Chaney*, 470 U.S. at 833-834.

28

Not only is the language of section 404(c) permissive rather than mandatory; "the statute [also] sets out no threshold requirements for the *initiation* of section 404(c) proceedings whatsoever: the sole specific limitation — the finding of an 'unacceptable adverse effect' — applies only to actions the [EPA] may take *after* the notice and hearing process." *Newport Galleria Group*, *supra*, 618 F.Supp. at 1182 (italics in original).  Nor do the section 404(c) regulations or the 404(b)(1) Guidelines provide standards for when the EPA should initiate the veto process, which could guide the courts in reviewing the EPA's decision.  The section 404(c) regulations state only that the Regional Administrator "may" initiate 404(c) proceedings if he has "reason to believe" that an unacceptable adverse effect may occur.  40 C.F.R. 231.3(a).  The 404(b)(1) Guidelines do not address the section 404(c) process at all.  *See* 40 C.F.R. Part 230.  Plaintiffs' legal conclusion that, in making its alleged decision not to veto the Newhall permit, the EPA applied "standards" found in section 404(c), the 404(b)(1) Guidelines and the 404(c) regulations, is just that — a legal conclusion (and a wrong one at that).  *See* Compl., ¶ 106.  Plaintiffs have identified no such standards, and this Court is not required to accept Plaintiffs' conclusory assertion as true.  *Warren*, *supra*, 328 F.3d at 1139; *Western Mining Council*, *supra*, 643 F.2d at 624.

The preamble to the EPA's section 404(c) regulations clearly states that the purpose of the EPA's authority is to "police" the administration of the section 404 program, that it has discretion to decide whether and when to exercise its authority, and that it will exercise its veto power only in the rarest of cases.  *See* 44 Fed. Reg. 58078-58079, 58081-58082.  *See also Newport Galleria Group*, *supra*, 618 F.Supp. at 1182 ("Congress gave the EPA wide discretion to determine when to initiate proceedings under section 404(c)").  Indeed, out of the hundreds of thousands of permits the Corps has issued over the years, the EPA has exercised its

section 404(c) authority only 13 times.[11]  Its views and actions demonstrate that it is acting in an enforcement capacity.  In deciding whether to initiate enforcement action in any particular case, the EPA must consider pragmatic factors such as agency priorities, allocation of scarce resources, and the likely outcome.  *See* 44 Fed. Reg. 58079, 58081; *Chaney*, 470 U.S. at 831-832.  Decisions regarding such factors are particularly unfit for the courts to make and thus are not subject to judicial review.  *Id.*

### 3. Several courts have concluded that the EPA's failure to exercise the section 404(c) power is not reviewable.

Several federal courts have concluded that the EPA's decision whether to exercise its section 404(c) veto power is committed to agency discretion by law and thus not subject to review under the APA.  In *City of Olmsted Falls v. U.S. Envtl. Protection Agency*, as here, the EPA initially had commented on a section 404 permit application, expressing concerns about the project's effects and stating that the permit should not be issued as proposed.  266 F.Supp.2d 718, 720 (N.D. Ohio 2003), *affirmed*, 435 F.3d 632.  The Corps ultimately issued a permit, and the EPA took no action under section 404(c).  Plaintiffs challenged that inaction, and the EPA moved to dismiss for lack of jurisdiction.  *Id.* at 718.

The EPA contended its decision whether to veto a permit under section 404(c) was committed to agency discretion by law.  The court agreed, finding support in the permissive language of the statute (the Administrator "is authorized") and the regulations, which state only that the EPA "may" take certain actions if it finds that unacceptable adverse effects may occur.  *Id.* at 723 (citing *Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Engineers*, 87 F.3d 1242, 1249 (11th Cir. 1996) (*P.E.A.C.H.*)).  The plaintiffs argued that the  404(b)(1)

---

[11] U.S. EPA, Clean Water Act Section 404(c) "Veto Authority" Fact Sheet, *available at* http://water.epa.gov/lawsregs/guidance/cwa/dredgdis/upload/404c.pdf (last accessed July 31, 2014).

SMRH:428079195.6

1    Guidelines imposed a nondiscretionary duty of compliance on the EPA, but the

2    court disagreed, holding that Clean Water Act section 404(b) "places no obligation

3    on the USEPA Defendants" and that the 404(b)(1) Guidelines "do not impose a

4    nondiscretionary duty on the part of the USEPA Defendants."  *City of Olmsted*

5    *Falls*, *supra*, 266 F.Supp.2d at 723.  The court concluded: "Because of the obvious

6    discretionary nature of the USEPA Defendants' veto power under Section 404(c),

7    the Court finds that it lacks jurisdiction to review the USEPA Defendants' decision

8    not to veto the Corps Defendants issuance of Cleveland's Section 404 permit."  *Id.*

9         The district court in *P.E.A.C.H.* reached the same conclusion, ruling that

10   neither the APA nor Clean Water Act section 505(a)(2) authorizes suit against the

11   EPA for failure to veto a section 404 permit because that decision is committed to

12   agency discretion by law under section 404(c).  *Preserve Endangered Areas of*

13   *Cobb's History, Inc. v. United States Army Corps of Engineers*, 915 F.Supp. 378,

14   381 (N.D. Ga. 1995), *affirmed*, 87 F.3d 1242.  The Eleventh Circuit affirmed that

15   decision without specifically addressing the subject of APA jurisdiction.

16   *P.E.A.C.H.*, 87 F.3d at 1249 (holding that section 505(a)(2) does not authorize suit

17   against the EPA because the decision whether to exercise its section 404(c) power is

18   discretionary).

19        The district court in *Cascade Conservation League*, *supra*, also found that the

20   EPA's decision not to use its section 404(c) authority was committed to agency

21   discretion.  921 F.Supp. at 692.  In *Cascade*, the court discussed at length the prior

22   cases analyzing whether the EPA's exercise of its section 404(c) power is

23   committed to agency discretion.  It agreed with the district court in *P.E.A.C.H.*,

24   concluding that "the EPA's decision not to act is committed to its discretion and thus

25   is not subject to judicial review under the APA."  *Id.*

26        *Mattaponi*, discussed above, is the sole outlier on this issue.  In *Mattaponi*,

27   the court considered whether plaintiffs could sue the EPA under the APA for its

28   alleged failure to veto a Corps permit.  515 F.Supp.2d 1.  Although the court agreed

with the EPA that the veto power was discretionary, the court found the agency's discretion was circumscribed by the language of section 404(c) and thus subject to judicial review.  According to *Mattaponi*, section 404(c) provides guidance, "however minimal," to assist the court in determining whether EPA abused its discretion.  *Id.* at 8.

In reaching its conclusion, *Mattaponi* incorrectly treated the "unacceptable adverse effect" standard, which the EPA applies in making a *final* section 404(c) determination, as a mandatory trigger for *initiating* the section 404(c) process. 515 F.Supp.2d at 8-9.  But that standard "applies only to actions the [EPA] may take *after* the notice and hearing process."  *Newport Galleria Group*, *supra*, 618 F.Supp. at 1182 (italics in original).  The *Mattaponi* court also did not explain how its conclusion was consistent with the permissive language of section 404(c) ("is authorized"), which other courts have relied upon in concluding that the veto power is discretionary.  *Id.*; *see*, *e.g.*, *Olmsted*, *supra*, 266 F.Supp.2d at 723.

*Mattaponi* suggested that the EPA's regulations might provide standards for the courts to apply in reviewing the EPA's decision whether to veto a permit, noting that regulations prescribing "mandatory action" can "overcome the presumption against the review of agency inaction."  515 F.Supp.2d at 8 n.6 (quotation marks and citation omitted).  But the plaintiffs had not identified any such regulations, *id.*, and the court did not consider the EPA's section 404(c) regulations.[12]  Those regulations do not prescribe any mandatory action; instead, they provide that the EPA "*may* initiate" section 404(c) proceedings if it has reason to believe that unacceptable adverse effects will occur.  40 C.F.R. § 231.3(a) (italics added).

Had *Mattaponi* considered the section 404(c) regulations, it presumably would have understood that it was required to defer to the EPA's interpretation of

---

[12] The matter came back before the same court in *Alliance to Save the Mattaponi v. United States Army Corps of Engineers*, 606 F.Supp.2d 121 (D.D.C. 2009), in which the court reaffirmed its view but did not engage in any further analysis.

those rules, including the EPA's view that it may decline to act under section 404(c) even where it believes that unacceptable adverse effects are likely to occur.  44 Fed. Reg. 58079; *see Auer*, *supra*, 519 U.S. at 462.  Likewise, to the extent the Clean Water Act is ambiguous regarding the EPA's discretion under section 404(c), the EPA's interpretation of the statute is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), so long as it is a "permissible construction of the statute."  *See Mingo Logan*, *supra*, 714 F.3d at 612-613 (construing section 404(c) under *Chevron* "step one" because it unambiguously expresses the intent of Congress to grant the EPA broad discretionary power).

The EPA's interpretation reflects its understanding that Congress assigned the section 404 permitting authority *to the Corps*, 33 U.S.C. 1344(a), and that the EPA's role is *not* to make or approve permit decisions in the first instance or to weigh in on each of the more than 60,000 permit actions the Corps takes each year.  Its role is to act only in the rare cases when action is necessary to enforce the 404(b)(1) Guidelines.  44 Fed. Reg. 58078-58079.  This Court should defer to the EPA's well-reasoned interpretation of its section 404(c) responsibilities and decline to second-guess the agency's enforcement decisions.

/ / /

/ / /

/ / /

/ / /

/ / /

SMRH:428079195.6

# VI.  CONCLUSION

For all the reasons explained, above Newhall submits that this Court should dismiss Plaintiffs' claim against the EPA defendants for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted.

August 1, 2014

Respectfully submitted,

Mark J. Dillon
David P. Hubbard
GATZKE DILLON & BALLANCE LLP

Robert J. Uram
James F. Rusk
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Miriam A. Vogel
MORRISON & FOERSTER LLP

Attorneys for Defendant-Intervenor The Newhall Land and Farming Company

By _____ /s/ James F. Rusk
                        JAMES F. RUSK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned, counsel for THE NEWHALL LAND AND FARMING COMPANY, hereby certifies that a true and correct copy of the attached documents was made available for viewing and downloading through the CM-ECF (Electronic Case Filing) system to all counsel of record who are registered to receive a Notice of Electronic Filing for this case.

Executed on August 1, 2014.

/s/ James F. Rusk
JAMES F. RUSK