UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      #31/32/37

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   Order DENYING Plaintiffs' Motion to Stay and GRANTING Defendants' and Defendant-Intervenor's Motions to Dismiss

Before the Court are Defendants' and Defendant-Intervenor's motions to dismiss the claims against the United States Environmental Protection Agency ("EPA"), EPA Regional Administrator Jared Blumenfeld, and EPA Administrator Gina McCarthy (collectively, "EPA Defendants"). Dkts. # 31-32. Also before the Court is Plaintiffs' motion to stay briefing and consideration of the motions to dismiss to allow jurisdictional discovery. *See* Dkt. # 37. After considering the arguments in the moving, opposing, and reply papers, the Court DENIES the motion to stay and GRANTS the motions to dismiss, without leave to amend.

I.   Background

The Newhall Land and Farming Company ("Newhall") has plans to construct a large-scale residential and commercial development project ("the Project") in northern Los Angeles County. *See First Amended Complaint ("FAC")* ¶¶ 1-2. The Project covers 2,587 acres and will permit construction of 19,812 residential units and 5.41 million square feet of commercial uses, making it one of the largest single residential developments ever proposed in California. *Id.* ¶ 2. Specifically, the Project site is Newhall Ranch, an area consisting of 12,000 acres of rugged undeveloped terrain and agricultural land along the Santa Clara River. *Id.* ¶¶ 1, 45. Diverse fish, wildlife, and plant species rely on the site, including numerous federally protected, threatened, and endangered species. *Id.* ¶ 2.

The Project site contains the river channel and floodplain of the Santa Clara River and Newhall Ranch is crossed by over 40 miles of streams tributary to the river. *Id.* ¶ 48. Construction of the Project will result in extensive modification of the Santa Clara River, including converting tributary streams to buried or channelized storm drains, filling and replacing free-flowing streams with concrete-lined channels, and clearing tens of acres of riparian forest and vegetation. *Id.* ¶¶ 2, 59-60.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#31/32/37**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

     The Clean Water Act ("CWA") is a federal statute that aims to restore and maintain the physical, chemical, and biological integrity of the nation's water. *Id.* ¶ 19. Section 404 of the CWA prohibits the discharge of dredge or fill material into the waters of the United States without a permit (a "Section 404 Permit") from the United States Army Corps of Engineers ("the Corps"). *Id.* ¶ 20. While the Corps is the entity that issues permits, the EPA Administrator has the authority to deny, restrict, prohibit, or withdraw the issuance of a Section 404 Permit whenever the Administrator determines that the discharge of materials will have an "unacceptable adverse effect" on certain environmental considerations. *Id.* ¶¶ 17, 27. Development of the Project requires this permit and Newhall applied to the Corps for a Section 404 Permit over ten years ago, in December 2003. *Id.* ¶ 78.

     In April 2009, the Corps released a Draft Environmental Impact Study for the Project and for the Corps' Section 404 Permit. *Id.* ¶ 81. During the review period for the permit in 2009, the EPA relayed environmental concerns to the Corps, saying that it had objections on the basis that authorization would have substantial and unacceptable impacts to an aquatic resource of national importance. *Id.* ¶ 86. On July 25, 2011, the Corps provided the EPA with a Notice of Intent to Proceed and a draft Section 404 permit for the Project. *Id.* ¶ 87. Two weeks later, the EPA Regional Administrator, Jack Blumenfeld, informed the Corps of the EPA's decision to not seek higher level review of the draft Section 404 permit, in light of specific changes and conditions added to the draft permit. *Id.*

     On August 31, 2011, the Corps completed its environmental review and issued a provision Section 404 permit to Newhall. *Id.* ¶ 88. On October 22, 2012, the Corps signed and/or issued the final Section 404 Permit. *Id.* ¶ 89.

     Plaintiffs are nonprofit organizations concerned with protecting environmental and Native American interests on the Project site that claim that they are adversely affected by the actions allowed under the Section 404 Permit. *Id.* ¶¶ 6-12. In response to the issuance of the permit, Plaintiffs filed this lawsuit against the Corps and EPA Defendants on March 6, 2014 and filed a First Amended Complaint ("FAC") on July 22, 2014. *See* Dkts. # 1, 28. Plaintiffs allege that the EPA's decision not to deny, prohibit, or restrict the Section 404 permit under its CWA Section 404(c) authority is arbitrary and capricious, an abuse of discretion, and not in accordance with law. *Id.* ¶ 106. Plaintiffs ask the Court to vacate the EPA's decision and remand to the EPA for further action consistent with the Court's ruling. *Id.* 41:21-23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#31/32/37

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

II.     Legal Standard

Federal courts are courts of limited jurisdiction and limits upon federal jurisdiction must not be disregarded or evaded.  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Accordingly, whomever invokes the court's jurisdiction bears the burden of establishing that subject matter jurisdiction is proper.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  If the court lacks subject matter jurisdiction then dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)").

A jurisdictional attack under Rule 12(b)(1) may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.* at 1039.  In reviewing a facial attack, the court must accept the allegations of the complaint as true.  *Id.*  But the court need not accept as true legal conclusions, even if cast in the form of factual allegations.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke jurisdiction," and the court may consider evidence outside the pleadings.  *Safe Air*, 373 F.3d at 1038-39.

III.    Discussion

Plaintiffs allege that the EPA's decision not to deny, prohibit, or restrict the Section 404 Permit pursuant to its Clean Water Act ("CWA"), 33 U.S.C. §§ 1251, *et seq.*, authority is subject to judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706.  Defendants and Defendant-Intervenor move to dismiss the claim against the EPA Defendants on the bases that (1) Plaintiffs lack standing to seek judicial review of the EPA's decision and (2) the EPA decision is not subject to judicial review under the APA because it is "committed to agency discretion by law" and is not a "final agency action for which there is no other adequate remedy in a court."  *See id.* §§ 701(a)(2), 704; *see Defendants' Mot. to Dismiss* 14:5-18; *Defendant Intervenor's Mot. to Dismiss* 12:26-13:8.  The Court will explain the EPA's role in the Section 404 permitting process then examine these bases for dismissal in turn.

        A.      EPA's Role in the Issuance of Section 404 Permits

Section 404 of the CWA authorizes the Corps to issue permits to allow for the "discharge of dredged or fill material into the navigable waters" of the United States at "specified disposal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#31/32/37

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

sites." 33 U.S.C. § 1344(a). Although the Corps makes the permitting decisions, the EPA has the power to veto a discharge to a disposal site if it makes certain findings:

> The [EPA] Administrator is authorized to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas [], wildlife, or recreational areas. Before making such determination, the Administrator shall consult with the Secretary [of the Army]. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection.

*Id.* § 1344(c). The EPA Administrator can only exercise this authority to prohibit, deny, or restrict specification of disposal sites (a "404(c) veto") if, after "notice and opportunity for public hearings," the Administrator finds that the discharge would have an "unacceptable adverse effect" on the environmental concerns specified in the statute.

The procedures that the EPA should follow in exercising its 404(c) veto power are outlined in regulations contained in 40 C.F.R. § 231. *See* 40 C.F.R. § 231.1(a). The regulations reiterate that "[u]nder section 404(c), the [EPA] Administrator may exercise a veto over the specification by the U.S. Army Corps of Engineers…of a site for the discharge of dredged or fill material." *Id.* The regulations also outline a process of review and notification that the EPA should follow *if* it chooses to initiate the 404(c) review process. *See id.* § 231.3.

 B. <u>Standing to Seek Judicial Review</u>

The "irreducible constitutional minimum of standing" contains three requirements: (1) "plaintiff must have suffered an injury in fact"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). The "redressability" element of standing presents an issue for Plaintiffs' claim against the EPA Defendants.

Plaintiffs allege that their injuries result from the actions permitted under the existing Section 404 Permit. See FAC ¶¶ 6-12. Thus, only Court action likely to lead to the revocation of the permit or otherwise prevent the actions allowed under the permit will adequately redress

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#31/32/37**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

Plaintiffs' injuries. If the Court finds that the EPA's inaction regarding Newhall's Section 404 Permit was arbitrary, capricious, an abuse of discretion, and unlawful, Plaintiffs ask the Court to vacate the EPA's decision not to act and remand that decision to the EPA for further action consistent with the Court's ruling. *Id.* ¶ 106; 41:21-23. The "vacatur" avenue of relief will not redress Plaintiffs' injuries because vacating the EPA's decision not to act will not, on its own, result in the EPA's vetoing the permit. It is the latter half of the Plaintiffs' request for relief—remand for further action consistent with the Court's ruling (a hypothetical ruling that the EPA abused its discretion when it did not veto the permit in the first instance)—that would result in an EPA veto of the permit and redress of Plaintiffs' injuries.

However, a Court order compelling the EPA to act a certain way is unavailable here because "the only agency action that can be compelled under the APA is action legally required." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63, 65 (2004) (clarifying that "the limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law"). In reaching this holding, the Supreme Court approvingly cited the Attorney General's Manual on the APA explaining that "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take upon a matter, without directing how it shall act.'" *Id.* at 64 (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)). Plaintiffs do not explicitly allege that they seek recover pursuant to § 706(1), but in requesting that the Court to order the EPA to act consistent with its ruling, they necessarily seek the Court to compel action under § 706(1), not simply to set an action aside under § 706(2). *See* 5 U.S.C. § 706.

Here, the EPA's ability to veto Section 404 Permits is discretionary and the EPA is not required to do so *even if* it finds "unacceptable adverse impacts." *See* 33 U.S.C. 1344(c) (the Administrator "is authorized to prohibit" specification of areas as disposal sites and "is authorized to deny or restrict the use of" any area for specification of as a disposal site if he makes certain findings) (emphasis added); *see also Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, et al.*, 87 F.3d 1242, 1249 (11th Cir. 1996) ("By statute, the Administrator is authorized rather than mandated to overrule the Corps"). In its regulations, the EPA also interprets its veto power as an option available to it rather than action required by the CWA: "Under section 404(c), the [EPA] Administrator *may* exercise a veto over the specification by the U.S. Army Corps of Engineers…of a site for the discharge of dredged or fill material." 40 C.F.R. § 231.1(a) (emphasis added). Plaintiffs even concede the discretionary nature of EPA's 404(c) veto power. *See Opp. to Defendants' Mot.* 14:10-14 ("EPA's discretion to disapprove disposal sites…is beyond dispute"). Accordingly, a Court order effectually demanding that the EPA veto Newhall's Section 404 Permit would compel the agency to perform a discretionary act in a specific manner; such relief is unavailable under the APA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#31/32/37

CIVIL MINUTES - GENERAL

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

Rather than argue that the CWA requires, rather than allows, the EPA to veto Section 404 Permits, Plaintiffs allege that they are asserting procedural violation of the CWA; therefore, the redressability requirement of standing is relaxed. *See id.* 23: 14-24; *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003). The softened standard is not available here because Plaintiffs are not alleging procedural violations of the CWA. Plaintiffs do not argue that the EPA did not follow requisite procedural guidelines in deciding not to initiate 404(c) review or veto the Newhall permit; rather, they argue that the EPA made a substantively incorrect decision when it did not initiate that review or veto the permit. *Cf. id.* at 970 (plaintiffs alleged procedural violations when they claimed citizens were deprived of the opportunity to comment during a rulemaking process). Thus, the full-force redressability requirement applies.

The Court finds that because it is incapable of ordering the requested relief against the EPA Defendants that would adequately redress Plaintiffs' injuries, the Plaintiffs lack standing under the APA to bring their claim against the EPA Defendants.

    C.    <u>Judicial Review Under the APA</u>

Moreover, even if Plaintiffs asserted facts sufficient to establish standing to bring their claims against the EPA Defendants, the Court lacks the power under the APA to review the EPA conduct at issue. Section 702 of the APA provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; *Parola v. Weinberger*, 848 F.2d 956, 958 (9th Cir. 1988). This section "does not itself grant subject matter jurisdiction, but is rather a waiver of sovereign immunity in suits seeking judicial review of agency actions where judicial review has not been expressly authorized by statute." *Parola*, 848 F.2d at 958. Here, the Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the federal CWA. However, whether Congress has waived sovereign immunity to allow judicial review of the agency conduct in question is a separate inquiry.

There is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986). However, this premise is "just" a presumption and the APA explicitly precludes judicial review of administrative conduct that "is committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2); *see also Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (1984).

The Supreme Court has explained that the "committed to agency discretion by law" exception to judicial review means that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#31/32/37

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The Supreme Court reasoned that this conception of the exception fits with the directive of APA judicial review because "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate the agency action for 'abuse of discretion.'" *Id.*

*Heckler* applied this reasoning to the context of an agency's decision not to enforce a rule that it has the discretion to enforce and went so far as to hold that when dealing with "an agency's decision not to prosecute or enforce, whether through civil or criminal process…the presumption is that judicial review is *not* available[.]" *Id.* at 831 (emphasis added). The Court explained that agency decisions not to enforce are generally unsuitable for judicial review because they "often involve[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise…the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits with the agency's overall policies, and, indeed, whether the agency has enough resources to undertake an action at all." *Id.*; *see also Lincoln v. Vigil*, 508 U.S. 182 (holding that the allocation of funds from a lump-sum appropriation is committed to agency discretion because it requires complicated balancing of factors that are not specified by statute and are peculiarly within the agency's expertise); *see also Rank v. Nimmo*, 677 F.2d 692, 699-700 (9th Cir. 1982) (Veterans Administration's discretionary decision on whether to accept assignment of a veteran's loan is "committed to agency discretion by law" because it involves consideration of internal agency factors and the statute does not provide a standard by which the decision could be reviewed). Thus, in *Heckler*, the Court concluded that "the general exception to reviewability provided by § 701(a)(2) for action 'committed to agency discretion' remains a narrow one, but within that exception are included agency refusals to institute investigative or enforcement proceedings, unless Congress has indicated otherwise. In so holding, we essentially leave to Congress, and not to the courts, the decision as to whether an agency's refusal to institute proceedings should be judicially reviewable." *Id.* at 838 (internal citation omitted).

In the present case, the EPA's decision not to initiate 404(c) proceedings or veto Newhall's Section 404 Permit is "committed to judicial discretion by law" because judicial review is inappropriate for the same reasons that the Supreme Court outlined in *Heckler*. The EPA's discretionary authority under 404(c) is akin to investigative and enforcement actions, and, most importantly, the Court would have "no law to apply" if it attempted to evaluate whether the EPA abused its discretion when it refrained from initiating 404(c) proceedings and from vetoing the permit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#31/32/37

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

The Corps is the entity that performs the in-depth studies and actually issues Section 404 permits, in accordance with regulations developed jointly with the EPA. *See* 33 U.S.C. §§ 1344(a-b) Under the CWA, the EPA has the authority to investigate the Corps findings and veto permits if it finds that the Corps issued the permits in spite of "unacceptable adverse impacts" to on certain environmental concerns. *Id.* § 1344(c). The EPA has explained that one of its "basic functions under [§1344(c)] is to police the application of the [§1344(b)(1)] guidelines" by the Corps. *See* 44 Fed. Reg. 58079. Accordingly, the EPA's role here is akin to an enforcement role. *See also Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692, 699 (W.D. Wash. 1996) (casting the EPA's decision not to review or reverse the Corps' finding that a Section 404 permit was not required in a certain instance because activity on the land fell within an exception as a presumptively unreviewable "enforcement decision").

While §1344(c) does provide some guidance as to when the EPA *can* veto a permit (after a threshold "unacceptable adverse effects" finding), the statute is silent as to when the EPA should initiate the comment and public hearing process to investigate potential effects and as to when the EPA should veto a permit. 33 U.S.C. § 1344(c). Under the statute, the EPA has discretion both as to when to investigate and when to veto and that discretion is not bounded by any further statutory directive such as a listing of factors to consider in making its decision. *See id.*; *see also Preserve Endangered Areas*, 87 F.3d at 1249 ("By statute, the [EPA] Administrator is authorized rather than mandated to overrule the Corps"). Thus, the Court has no "law to apply" to determine whether the EPA abused its discretion when neither of these actions took place. At both of these stages, the EPA makes the decision to act or not based on consideration of pragmatic factors unique to the agency that track those listed in *Heckler*, such as agency priorities, allocation of scarce resource, and likely outcome. *See* 44 Fed. Reg. 58079, 58081; *see also Cascade*, 921 F. Supp at 699.

One District of Columbia District Court has found that the "committed to agency discretion by law" exception did not apply to the EPA's decision not to veto a Section 404 Permit because the "unacceptable adverse effect" statutory language provided a standard by which courts can review the EPA's decision, but that court misinterpreted the role of an "unacceptable adverse effect" finding in the CWA statutory scheme. *See Alliance To Save Mattaponi v. U.S. Army Corps of Engineers*, 515 F. Supp. 2d 1, 8 (D.D.C. 2007). The EPA is not required by statute to veto the Corps' permits, even if it finds that activity allowed by the permit will result in "unacceptable adverse effects." *See Preserve Endangered Areas*, 87 F.3d at 1249. The *Mattaponi* reasoning suggests that in making its decision not to act (not to further investigate or veto a particular permit), the EPA must base its decision on the extent of the permit's impacts. The court conceded that finding those impacts does not mandate an EPA veto, but implicitly reasoned that if the impacts were extremely adverse and unacceptable and the EPA did not act, then the EPA had abused the discretion afforded it to refrain from acting. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#31/32/37

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

However, nothing in the statute or the regulations suggests that the EPA's decisions are cabined in this manner. Rather, the EPA decides whether to act based on non-statutory considerations of the type outlined in *Heckler*—"the agency must assess not only whether a violation occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it act, whether the particular enforcement action…best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." *See Heckler*, 470 U.S. at 831. The adverse effect standard is only helpful for judicial review of EPA action under this provision if the EPA had actually vetoed a permit because then the court could analyze whether the EPA found "unacceptable adverse effects" as required by the statute. However, the decision not to act is based on different factors that are not outlined in the statute or the regulations and are unsuitable to judicial review. *Id.*, 470 U.S. at 832 ("when an agency *does* act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers") (emphasis in original). Due to the broad discretion granted to the EPA to decide whether to act under §1344(c), discretion that is not restricted by any additional statutory consideration, the Court lacks any meaningful standard to apply in evaluating inaction and thus determines that the conduct is "committed to agency discretion by law."

Because the Court finds that the EPA's decision to not to veto Newhall's Section 404 Permit is committed to the EPA's discretion by law, it is immune from judicial review under the APA. This finding is reached as a matter of law; therefore, the Court will not grant leave to amend because leave will not allow Plaintiff to state valid claims against the EPA Defendants. *See Kyle Rys., Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 518 (9th Cir. 1993). The Court has no need to address Defendants' additional APA arguments regarding the finality and other adequate remedies in court.

      D.    <u>Plaintiffs' Motion to Stay to Allow Jurisdictional Discovery</u>

Plaintiffs seek jurisdictional discovery to develop facts about the EPA's decision-making process that they claim will demonstrate that the EPA's decision meets the test for "final agency action" and that it is not "committed to agency discretion by law" under the APA. *See Mot. to Stay* 6:20-8-2. The Court did not dismiss Plaintiffs' claims on "final agency action" grounds; therefore, jurisdictional discovery would not aid Plaintiffs in opposing the motions to dismiss at issue.

Moreover, factual discovery regarding EPA's decision-making process will not aid the Court in considering whether the EPA's decision not to act was "committed to agency discretion by law." The Court based its determination on that issue on analysis of the text of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#31/32/37**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-1667 PSG (CWx) | Date | September 26, 2014 |
|---|---|---|---|
| Title | Ctr. for Biological Diversity, *et al.* v. Army Corps of Eng'rs, *et al.* | | |

undisputed law at issue, 33 U.S.C. § 1344(c) and its regulations. Additionally, the Court finds that Plaintiffs lack standing to assert their claims against the EPA Defendants and Plaintiffs cannot cure that deficiency with factual showings. Accordingly, the Court denies Plaintiffs' motion to stay to allow jurisdictional discovery.

Independently, Plaintiffs' request for jurisdictional discovery is inappropriate because Defendants and Defendant-Intervenor assert facial, not factual, attacks on jurisdiction. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). They do not dispute any of the facts underlying Plaintiffs' assertions, only the legal conclusions that Plaintiffs draw from those facts. *See Defendant-Intervenor's Opp. to Mot. to Stay*, 4:20-26; *Defendants' Opposition to Mot. to Stay* 2:5-7.

IV.   Conclusion

Based on the foregoing, the Court GRANTS Defendants' and Defendant-Intervenor's motions to dismiss, without leave to amend, and DENIES Plaintiffs' motion to stay. Plaintiffs' claims against Defendant U.S. Army Corps of Engineers are unaffected by this order.